# CHARLESTOWN.

### TITCHENELL *v.* JACKSON AND FEATHER.

Submitted June 12, 1885.—Decided September 19, 1885.

1. If the language of a written agreement is on its face ambiguous, the courts will look at the surrounding circumstances, at the situation of the parties and the subject-matter of the contract, and at acts done by the parties under it for aid in giving a construction to its language, but not to the verbal declarations of the parties. (p. 469)

2. If a conveyance be made by A. to B., and at the same time and as a part of the same transaction B. executes a written paper, wherein he declares, that he purchased the land in trust for C., this constitutes an executed and express trust, and as such it is valid, though C. gave no consideration whatever for being thus made the *cestui que trust.* If B. afterwards conveys this land to D., who has notice of this trust, a court of equity will set aside such conveyance as fraudulent. (p. 472.)

3. A decree between co-defendants can only be based upon the pleadings and proofs between the complainant and defendants. (p.476 .)

GREEN, JUDGE, furnishes the following statement of the case :

At the July rules, 1882, Michael S. Titchenell filed his bill in the circuit court of Preston county against Charles W. Jackson and Joseph Feather, in which he stated, that Charles W. Jackson had obtained a judgment in the circuit court of Preston against him and then instituted a chancery suit in said court to subject his farm of fifty acres in said county to the payment thereof, and obtained a decree ordering the sale of said land to pay said debts and the costs of the chancery suit. The terms of sale were enough money in cash to pay the costs ($57.49) and the balance in three instalments with interest from date, payable in six, twelve and eighteen months. This land, the bill alleges, was worth $800.00. Joseph Feather agreed to bid in the land for the plaintiff for the amount of the debt and costs of suit, for which the land was sold ; and he did so, it being knocked down to him at the public sale by the commissioner for that amount ($180.50.) The understanding between him and Feather was reduced to writing at the time and signed by Feather. A copy of it was filed with the bill and is as follows :

"Joseph Feather has this day bought in the land of M. S. Titchenell for the sum of $180.50, and he agrees that if the said M. S. Tichenell will pay the purchase-money notes as they become due, and shall pay the costs of said suit, which amounts to $52.49, and interest, by January 1, 1881, then the said Feather agrees *to let the said Feather agrees* to let the said Tichenell have the said land and will make him a good title therefor at the costs and charges of said Titchenell.

"Witness my hand and seal this September 6, 1880.

"JOSEPH FEATHER, [——.]"

The bill alleges that pursuant to this agreement the plaintiff paid most of said costs before January 1, 1881; and being sick Feather agreed that he might pay the balance of the costs as the notes for the purchase-money fell due ; but before they all fell due Feather conveyed said land to said Jackson with the understanding that the plaintiff, Titchenell, could pay said Jackson and have the land on the same terms, on which he was to have it from Feather. The bill expressly alleges, that Jackson, before he purchased said land

and had it conveyed to him by Feather, knew of the agreement aforesaid between Titchenell and Feather. After Jackson got his deed for this land, the bill alleges, he got a writ of possession and turned the plaintiff out of the possession of his farm. The bill has in it many matters foreign to the case, but the foregoing are substantially the material allegations. It concludes thus: "In consideration of the premises, your orator asks your honor to cancel and annul the alleged contract and sale and conveyance of said Feather to said Jackson, the same having been, as your orator is advised, in violation of your orator's rights, and is, as your orator alleges, a fraud upon him; and that your honor decree, that your orator have the privilege of paying for said land in pursuance of the agreement between him and Feather, and when your orator shall have so paid for said land, that your honor decree the title thereof to him; and to that end that your honor decree, that a deed be executed to your orator for said land and give to your orator such other and further relief, as to him in equity belongs, or as the nature of his case may require."

This bill was taken for confessed as to Feather; but Jackson filed an answer, which was replied to generally. He states in his answer, that it is true, that in the chancery suit named in the bill there was a decree to sell this fifty acres of land belonging to the plaintiff to pay the debts of the respondent, and that Feather bought it; and that "while the respondent was not advised at the time how the same was purchased, he has learned, that said Feather for the express purpose of aiding the plaintiff purchased said tract of land and gave the plaintiff the paper signed by Feather, which is filed with the bill." This answer denies that the plaintiff ever paid to any one any part of the purchase-money of this land.

Many depositions were taken and they were to a considerable extent contradictory. They proved in my judgment, in addition to the facts admitted by the pleadings, that this tract of fifty acres of land was worth somewhat over $400.00; that Titchenell never complied with his agreement to pay Feather the $52.49, the cash payment which he was to pay before January 1, 1881, nor did he meet any of the purchase-money notes named in the memorandum signed by Feather, dated September 6, 1880, nor did he ever pay any part of

these costs or of ·these purchase-money notes; that on the day of sale Feather bid in this land for the plaintiff, Titchenell, for $180.50, and complied with the terms of sale paying $52.49 in cash and giving his three bonds for $46.00 each, with interest from date, payable in six, twelve and eighteen months, which bonds were signed by Titchenell as security. Feather knew nothing whatever about this land never having seen it, and bought it in for Titchenell at his request and simply for his accommodation. He (Titchenell) was a very poor man and lived upon this fifty acres of land with his family as their home and continued to do so, till he was dispossessed by the writ of possession issued by Jackson after he had bought the land and obtained a deed from Feather. Titchenell paid no rent for the land to Feather for the year he remained in possession of it after the sale. When Jackson had got his deed for this land from Feather, the commissioner of sale, Payne, surrendered the purchase-money notes to Feather, regarding them as so much cash paid by Jackson to him, as the proceeds of these notes were coming to Jackson. When Jackson purchased this land of Feather and obtained a deed therefor, he knew, that it had been purchased in at the public sale by Feather for Titchenell, and Payne, the commissioner of sale, had, before Jackson made this purchase, shown him the memorandum signed by Feather at the time of the public sale. This memorandum was drawn by Payne and by him kept.

There was much evidence taken with reference to matters foreign to the merits of the case, as I consider them, which need not therefore be stated.

This being substantially the case as admitted by the pleading and proven by the evidence, the court on April 19, 1883, rendered the following decree:

"At a circuit court held for the county of Preston on April 19, 1883, this cause came on this day to be heard upon the bill of the plaintiff, process duly executed upon the defendants, the bill taken for confessed as to the defendant Feather, answer of defendant Jackson filed, general replication thereto, exhibits filed, and depositions of witnesses taken, and was argued by counsel.

"On consideration whereof, it is adjudged, ordered and

decreed that the deed executed on the 13th day of September, by the defendant Joseph Feather to the defendant Charles W. Jackson be and the same is hereby set aside and held for naught.  And it further appearing to the court that the said plaintiff upon the payment of the purchase-money mentioned in the contract filed with plaintiff's bill as Exhibit No. 1 to the defendant Joseph Feather, to-wit, the sum of $208.83, being the aggregate of said purchase-money and interest to this date, which is hereby declared to be a lien upon the said tract of land, will be entitled to a conveyance from the said Feather of the fifty acres of land mentioned in the plaintiff's bill.  It is therefore further adjudged, ordered and decreed that upon the payment of said lien, said defendant Feather shall execute and deliver to the plaintiff a deed with covenants of general warranty for the said tract of fifty acres of land, with area and boundaries as described in the deed from said Feather to said Jackson, dated September 13, 1881, within sixty days from the payment of the said lien aforesaid ; and in case he fail or refuse so to do, that Joseph H. Hawthorne, who is hereby appointed a special commissioner for the purpose, shall execute and deliver to the said plaintiff a deed, with areas and boundaries aforesaid, for the said land, which shall operate to convey to the said plaintiff the title of the said Feather acquired by him by his said purchase of said land on September 6, 1880, for which said commissioner shall be allowed a fee of $3.00, to be paid by said Tichenell.  And it further appearing to the court that the said plaintiff has been turned out of the possession of said land since his said purchase of the said Feather on September 6, 1880, by the said defendant Jackson, who subsequently purchased said land of said Feather, it is further adjudged, ordered and decreed that upon the payment by the plaintiff to the said Feather of the lien aforesaid, that the said plaintiff may have a writ of possession to cause him to have possession of the said land.  It is further adjudged, ordered and decreed that the plaintiff recover against the defendant Joseph Feather his costs therein."

From this decree the defendants, Feather and Jackson, obtained an appeal and *supersedeas.*

There is appended to this record though not properly a

part of it a writ of possession issued by the plaintiff, Titchenell, under this decree, which recites that he, Titchenell, had paid the $208.83 with interest, as appeared from a paper filed in the cause. On this writ was endorsed a return, that it had not been executed because of the *supersedeas* to said decree, which had been granted.

*P. J. Grogan* and *Guy R. C. Allen* for appellants.

*Berkshire & Sturgiss* for appellee.

Green, Judge:

The counsel for the appellants has argued this case, as though the question presented by the record was, whether a court of equity would specifically enforce the contract entered into by Joseph Feather with Michael S. Titchenell on September 6, 1880; and he argues, that it should not be specifically enforced, first, because it is not mutual; second, because it is too uncertain for specific enforcement; third, because it should be regarded as *nudum pactum* there being no consideration on the part of Titchenell, and therefore it can not be specifically enforced in his favor; and fourth, because the plaintiff below has entirely failed to perform his part of the contract, as is distinctly admitted by the decree of the court below in his favor. On the other hand the counsel for the appellee, the plaintiff below, have argued this case, as if the question before us was, whether the deed for the fifty acres of land made by the commissioner of the court, John Barton Payne, to Joseph Feather was, as it purports to be on its face, an absolute deed or a mortgage; and whether the contract made by Feather with Titchenell was a conditional sale of this tract of land, or whether by it Feather agreed to hold the legal title to the land simply to secure the payment to him of the $52.50, the cash paid by him on the day of sale, and as a further security for his indemnity, in case he should have to pay any of the three notes of $46.00 each, which he that day executed for the purchase-money of this land, together with Michael S. Titchenell, he standing, it is insisted, as the security of Titchenell in these notes, though the transaction, so far as the vendor, the commissioner, is concerned, took the form of

a purchase by Feather and the giving of these notes by him for the land with Titchenell as his security.

It seems to me, that the real question involved in this case is not, whether the plaintiff has a right to have the contract specifically enforced, or whether the transactions between the plaintiff and Feather make the absolute deed to Feather a mortgage, but whether these transactions did not make Feather, when he took the deed from Payne, the commissioner, a trustee for the plaintiff Titchenell, and whether he did not violate this trust, when he conveyed this land to the defendant, Jackson; and whether Jackson, when he took such conveyance from the trustee Feather, did not take it in bad faith; and whether the deed from Feather to Jackson should not therefore be declared fraudulent and void; and whether the trustee, Feather, should not be required upon the payment to him of all the moneys he had advanced and on the payment of all the moneys for which he was bound as surety for the plaintiff, to convey this land to the plaintiff. This, it seems to me from the final decree rendered in the cause by the court below, is the view which that court took of the case. If he were such trustee, then the final decree of the circuit court must be affirmed, otherwise it must be reversed.

In deciding this question it becomes necessary to decide whether any parol testimony can be considered in determining it.

It is obvious, that if this deed on its face had been to Feather for the use of Titchenell, it would have been an executed and an express trust, which would have been valid, though it had been a mere gratuity to Titchenell. In fact a deed in this form would have been nothing but the usual mode anciently of creating a use, which by the English statute of uses would have been executed and the legal title at once invested in the *cestui que* use, Titchnell. Under our statute of uses however the legal title would not have been so transferred to the *cestui que* use, Titchenell; but the vendee Feather would have held the legal title in trust for the use of Titchenell, just as he would have done prior to the statute of uses. It would not in the least alter the case, if when the purchase was made a memorandum in writing had been executed

by the nominal purchaser, Feather, whereby he declared, that the land purchased was for the use of Titchenell, though, when the deed was executed to him, there had not been inserted in it the provision, that it was conveyed to Feather for the use of Titchenell. It would be entirely immaterial, whether the declaration of such use was made on the face of the deed or in such separate paper executed by the nominal purchaser of the land at the time of the purchase; and in such a case, as when the declaration of use was made on the face of the deed, it would be totally immaterial, whether the *cestui que trust*, Titchenell, had or had not given any consideration for his position as *cestui que trust*.

While as a general rule parol evidence can not be admitted to vary or add to a written contract and especially a contract for a sale of land or a deed conveying land, there are however some cases, which are sometimes called exceptions to the general rule, though really not exceptions, being cases to which this rule is not properly applicable. Thus, if the grantee has fraudulently taken a deed in his own name instead of in the name of another, this fact may be proven by parol evidence, and when proven, it would constitute him a trustee of such other person in the view of a court of equity as effectually, as if the land on the face of the deed had been conveyed to him for the use of such other person. So if lands are purchased with the funds of A., and the absolute deed taken in the name of B., a court of equity would hold on the parol proof of these facts, that A. was but the trustee of B. as much, as if it had been so declared on the face of the deed. So if the scrivener had made a mistake in drawing the deed, it would be corrected by a court of equity on such mistake being clearly proven by parol evidence. So too a deed absolute on its face may be shown by parol evidence to have been given as security for a loan or as security for the payment of a precedent debt. In all these cases the real office of parol evidence is not to vary the deed or contract in writing, but to establish the existence of collateral facts, which when established control the deed or written contract. In like manner, if a party obtained a deed or devise without any consideration upon a parol assurance by the grantor or devisee, that he will hold it for certain uses, he will be regarded by a court of

equity as holding the land as a trustee for such purposes, and
that too though in case of a deed it was declared on its face, that
it was made for a valuable consideration.   In such cases the
deed or will is not added to or altered by parol evidence;
but this evidence fastens on the individual, who has obtained
the title without consideration, the personal obligation of
fulfilling the trusts, by the promising to fulfil which he pro-
cured the title.   But if the land was conveyed for a mere
nominal consideration, a court of equity would not admit
parol evidence to prove, that the grantee agreed to hold the
land for the use of the grantor as such parol evidence would
defeat the very purpose, for which the deed was made and
would thus violate the general rule above laid down.

The seventh section of the English Statute of Frauds, 29,
Car. II., ch. 3, enacts that all declarations and creations of
of trust or confidence in any lands, tenements or heredita-
ments "shall be manifested and proved by some writing
signed by the party, who is by law to declare such trust, or
by his last will in writing."   This section, or a section very
similar to it, has been enacted in at least nineteen States,
and constitutes a part of their statute of frauds.   On the
other hand it has been omitted from the statute of frauds in
at least ten States including Virginia and West Virginia.

Where this seventh section of the English statute of frauds
has been enacted, it is held that trusts in land can not be
proven by parol; and where it has not been re-enacted, the
decisions on this point have been variant.   In Virginia and
in West Virginia there have been no decisions as to whether
the omissions of this section of the English statute of frauds
has really made any difference in effect.   There have been,
however, some *obiter dicta* on this point.   (*Bank of United
States* v. *Carrington et al*, 7 Leigh 566; *Walraven* v. *Lock et al*,
2 Patton & Heath R. 547; *Sprinkle et al.* v. *Hayworth et al*, 26
Grat. 384; *Troll* v. *Carter*, 15 W. Va. 580–582.)   In this last
case I express the opinion, that a grant can not be affected
with an oral trust for a third person, merely because there
was a parol contract, that it should be so affected.   But this
was confessedly an *obiter dictum*, the court declining in that
case to decide this point.   The whole subject is fully con-
sidered in that case; and all the views I have above ex-

pressed are fully sustained by it and by the numerous authorities cited therein. But as in that case we deemed it unnecessary to decide whether a trust would be imposed on real estate in favor of a third person, when no fraud was proven, simply by parol proof that there was a contract that such trust should exist, so in this case we decline to determine this question, as its decision is, we think, unnecessary. For in this case it is not proposed to impose on the land named in the bill a trust in favor of the plaintiff below simply on parol evidence of a contract or agreement to that effect but on a written memorandum signed by the grantee at the time this land was purchased. It is true, that this memorandum is on its face ambiguous, and unaided by any parol evidence it would be if not uninteligible at least so doubtful in its meaning, that it could not be deemed a declaration of a trust in favor of Titchenell; but it may be regarded as well settled, that when the language of a written agreement is susceptible of more than one interpretation, that is to say, is on its face ambiguous, the courts will look at the surrounding circumstances existing when the contract was made, at the situation of the parties and the subject-matter of the contract, and will even call in aid the acts done by the parties under it as affording a clue to the intention of the parties; but the court never resorts in such a case to the verbal declaration of the parties either before, at the time or after the execution of the contract to aid it in giving construction to its language. (*Crislip, Guardian, &c.* v. *Cain,* 19 W. Va., 441, pt. 13 of syl. and the numerous authorities cited on pages 483 and 484.

Applying the rule here laid down to the memorandum or agreement dated September 6, 1880, executed by Joseph Feather, I think there is no difficulty in construing it, though on its face unaided by parol evidence of the situation of the parties, the circumstances surrounding them when this memorandum or contract was signed, and their conduct subsequently in carrying it into effect; it would be ambiguous. All ambiguity in this memorandum may be removed by this character of parol evidence, though all the verbal declarations of the parties as to its meaning are excluded, as indeed they must be. In fact in this case, if such verbal declarations were

received, so far from aiding us in the interpretation of the contract they would only tend to render it the more ambiguous, as these verbal declarations are in their character contradictory.

What by the parol evidence was the situation of the parties and the circumstances surrounding them, when this memorandum was signed, and what their subsequent conduct in carrying it out? A chancery suit had been instituted in the circuit court of Preston county to subject a tract of land of about fifty acres owned by Michael S. Titchenell in said county to the payment of a debt. This debt, interest and the costs of the suit amounted on September 6, 1880, to about $180.00, of which $52.50 was costs. This tract of land was worth not less than $400.00, and it had been decreed to be sold at public sale at the court-house in Preston by J. Barton Payne, commissioner, to pay this debt. While the sale was being made, the plaintiff in the chancery suit by the advice of the commissioner of sale, who, I presume, was his counsel in this cause, bid for this fifty acres of land the amount of his debt, interest and costs ($180.00.) This being really considerably less than half its value Titchenell, the owner of the land, asked Joseph Feather, who was present at this sale, to bid for the land for him; and though Feather did not want it he did so, bidding for it fifty cents more, and it was knocked down to him. He then made the cash payment on this land to Payne, the commissioner of sale, being the costs, $52.50, and gave his three bonds with Titchenell as his security for the balance of the purchase, which was payable in three equal instalments in six, twelve and eighteen months with interest from date. At the same time Payne drew up this memorandum dated September 6, 1880, and it was signed by Feather and kept by Payne. This is the memorandum which is to be interpreted. Titchenell remained in possession of the land and cultivated it paying no rent therefor, no rent being charged for its use. At the circuit court of Preston this sale being reported by the commissioner to the court as a sale of the land to Feather, and that he had complied with the terms of sale, there being no exception to his report, the sale was confirmed and a deed was ordered to be made to Feather by the commissioner, the vendor's lien to be reserved

as security for the future payments. This deed was accordingly made, and Titchenell having failed to repay to Feather the $52.50, the cash payment on this land, or either the first or second of the deferred payments ot about $46.00 each, both of which had become due, Feather sold the land to Jackson and executed a deed conveying it on September 1, 1881.

These being the material facts, it seems to me, that in the light shed by them there is no sort of difficulty in interpreting the memorandum signed by Feather. It begins in these° words : " Joseph Feather has this day bought in the land of M. S. Titchenell for the sum of $180.50." The meaning of this preamble is evidently that Joseph Feather at the public sale just made had bought of the commissioner, who wrote this memorandum, this fifty-acre tract of land owned by Michael S. Titchenell for $180.50, and had bought it for Michael S. Titchenell and not for himself. This is what is meant by the words " bought *in* the land of M. S. Titchenell for $180.50." This memorandum then proceeds, " and he (Joseph Feather) agrees that if the said Michael S. Titchenell will pay the purchase-money-notes, as they become due, and shall pay the costs of said suit, which amount to $52.49, and interest by January 1, 1881, then the said Feather agrees to let the said Titchenell have the said land and will make him a good title thereto at the costs and charges of said Titchenell."

The preamble of this memorandum shows, as we have seen, that this tract of land was bought for Titchenell by Feather; and therefore, as we have seen, Feather became by this purchase a trustee holding the legal title to the land for the use of Titchenell; and, that the parties regarded themselves as holding this relation to each other, is distinctly shown by the fact, that Titchenell occupied this tract for a year thereafter without being charged any rent therefor, and by the further fact, that he Titchenell permitted this sale of his land at less than one-half of its value to be confirmed by the court without making any exception to the sale because of the gross inadequacy of the price, at which it was sold.

This being then the obvious relation of the parties to each other as understood by both of them, the rest of the memorandum interpreted by these circumstances amounts to this,

that Titchenell would repay to Feather within three months the $52.49, which he had that day paid for him to the commissioner of sale, and would pay off the three notes of about $46.00 each, which Feather had executed for the deferred payments with Titchenell nominally as his surety; and to indemnify him for the $52.49, which he had paid for Titchenell and to indemnify him against loss by reason of his having executed the three notes of $46.00 each as surety for Titchenell, the legal title to this land would be conveyed to Feather, who would re-convey it to Titchenell on his re-paying the money paid for him and paying off the purchase-money notes.

This being the obvious meaning of this memorandum or agreement, it is obvious, that though Titchenell failed to pay the $52.49 to Feather on January 1, 1881, or failed to meet each of the deferred payments on the land, as they fell due, it would not operate in a court of equity as a forfeiture of his equitable title to the land, which was worth probably ten times the amount of any one of these payments, the failure to meet which promptly at a certain time was, as it is claimed, to work such forfeiture. This is not only the law, as it has always been recognized by courts of equity, who never enforce forfeiture, but it was obviously the law as understood by the parties to this agreement. For though Titchenell had failed to pay to Feather the $52.49 he had paid for him before January 1, 1881, yet Feather permitted him for a long time thereafter to hold possession of the land, as though he was the owner thereof, and does not appear to have thought, that he had by this failure forfeited all his right to the land till some nine months thereafter.

My conclusion therefore is, that Feather was but the trustee holding the legal title to this land, first to repay himself this $52.49 which he had paid for Titchenell and thus to indemnify himself for any loss by reason of his having signed with Titchenell the three notes of about $46.00 each, and then for the use of Titchenell.

In violation of this trust Feather on September 13, 1881, sold and conveyed this land to Jackson for, it is presumed, the price, for which it had been knocked down to him at the public sale on September 6, 1880, with the interest then due thereon, that is, $180.50 with interest from September 6,

1880, though what was the price paid for this tract of land by Jackson does not distinctly appear, nor is it at all important. The record shows distinctly, that when this sale and deed were made to Jackson, he had notice, that his grantor, Feather, was but a trustee, and that Titchenell was the equitable owner. This is distinctly and positively alleged in the bill. The language of the bill is : "Your orator alleges and charges, that said Jackson knew of the contract between the plaintiff and Feather as aforesaid, when and before he purchased said land, if purchase it he did, and received a deed therefor from said Feather." This distinct allegation in the bill is not denied by Jackson in his answer, and must therefore be regarded as true. All that Jackson in his answer says on this subject is : "When the tract of land in the bill mentioned was sold by the commissioner of the court, the said Joseph Feather purchased the same, and while respondent was not advised at the time how the same was purchased, he has learned that Feather, for the express purpose of aiding the plaintiff, purchased the said tract of land and gave the plaintiff a paper signed by him, a copy of which is filed with the bill." The bill distinctly alleges, as stated above, that Jackson had this definite knowledge of the character of the purchase by Feather, before he purchased and procured the deed from Feather. This knowledge is thus distinctly admitted by Jackson in his answer ; and while he does not expressly admit, that he heard it prior to September 13, 1881, when he accepted the deed from Feather, yet he utterly fails to state, when he acquired this knowledge, and does not pretend to deny, that it was prior to September 13, 1881, when he took the deed. We must regard therefore the allegation on this subject above quoted from the bill as admitted in the answer. If it had not been, we think it was clearly proven by the evidence taken in the case.

Titchenell deposes, that Jackson was present, when this memorandum or agreement was signed by Feather, and made suggestions in relation to it, while Payne, the commissioner of sale, was drawing it up. Jackson in his deposition denies, that he was present, when this memorandum or agreement was signed. Feather says, he does not remember, whether Jackson was present or not ; and Payne, who drew up the

paper, and who was, it is presumed, then as now counsel for Jackson, is silent on the subject. But Jackson in his deposition admits, that Payne told him of this arrangement between Titchenell and Feather and showed him this memorandum or agreement. This conversation, he says, was either in the spring or fall of 1881. But it was obviously before the deed was made to him; for he says, that Payne then told him, that no part of the purchase-money notes had been paid, and when this deed was made to him these notes were paid and cancelled, as stated by Payne in his deposition.

The purchase, therefore, of this land by Jackson of Feather, the trustee, with full and definite knowledge, that Feather was not the equitable owner, but that Titchenell was the equitable owner, was a fraud upon Titchenell; and the circuit court of Preston did not err in its decree of April 19, 1883, in setting aside and holding as naught this fraudulent deed. Nor did it err to the prejudice of the appellants in declaring that the entire amount of the purchase-money for this land at the public sale made by Payne on September 6, 1880, that is to say, the $180.50 with the interest thereon, was a lien on the said tract of land, and when it was paid in full by Titchenell the said tract of land should be conveyed by Feather to him, or if Feather then refused to convey, it should be conveyed to him by a commissioner of the court appointed for the purpose in the decree. Nor was there any error in the decree that, when Titchenell had fully paid off this lien, he should have a writ of possession against Jackson, who had obtained possession of the land, since the deed for it was made to him.

Of course there is much of the evidence in this cause, which according to these views must be regarded as immaterial, and which I have not considered, though much of the argument of counsel was with reference to the facts proven by such evidence, which was contradictory and unsatisfactory. These disputed questions of fact, which I deem irrelevant, are such as these: Did Tichenell pay to Feather the whole or any part of the $52.49 paid to Payne, the commissioner of sale, as the cash payment on the purchase of this land? It was assumed by the decree of the court below, that he did not, and of course the appellants can not complain on this ac-

count.   Did Feather promise or agree with Titchenell at any
time, that he would extend the time, within which Titchenell
should be required to pay any or all· of the deferred pay-
ments of the land?   Did Titchenell offer to pay to Jackson
the amount of this purchase-money, and did Jackson refuse
to accept it?   Was Titchenell utterly insolvent and unable
to pay anything?   All these and other ‛like controverted
questions of fact discussed by counsel would not however
settled affect the conclusion I have reached.

It was strongly insisted by the appellant's counsel, that the
decree should be reversed, because even if the decree was
right in setting aside the sale by Feather to Jackson, still it
ought to have provided for a re-sale of the land in order to
pay to Jackson, the plaintiff in the former chancery suit, his
debt, as it would remain unsatisfied, if this sale to him was
set aside; for this debt was satisfied in no other way than by
the sale of this land to him.   But this decree fails to pro-
vide for this protection to Jackson in this or in any other
manner; and thus he an innocent party is made to lose his
debt, which the court in the former suit had declared to be a
lien on this land.

This would be very plausible, if Jackson was an innocent
party, and if the result of this decree was necessarially to cause
him to lose his debt.   But one of these propositions is cer-
tainly not true, and the other also is very probably false.
Jackson was certainly not an innocent party.   The deed to
him is set aside, because Feather in violation of his trust con-
veyed this land to him, and because when he purchased it
and directed commissioner Payne to receipt for the purchase-
money-notes as paid, he did so with a full knowledge, that
Feather was acting in bad faith in selling this land; and he,
Jackson was guilty of a fraud, when he purchased from one
who, he ought to have known, had no right to sell him the
land.   More especially was he reprehensible, when he thus
wrongfully purchased this land at less than one-half its ac-
tual value.   If as the result of his improper conduct.he loses
his original debt, he should regard this loss as the result of
an effort on his part to defraud his debtor, Titchenell, of an
amount not less than the amount of his debt.   But there are
strong reasons for believing, that if this original debt has

not already been fully paid to him by Feather, it will be. The full amount of this debt has been or will be paid by Titchenell to Feather, it being a lien on this tract of land; and it is not improbable, that it has already been paid by Feather to Jackson, or if it has not been, that it will be without any controversy or trouble. There is no evidence in this record, it is true, on this subject, and there could be none properly; for it is all foreign to the objects of this suit. Still one can not but suspect this to be the state of the case, because it is obvious, that there is no controversy between these defendants Feather and Jackson, both being represented by the same counsel in this Court. Nor was there any sort of controversy between them in the court below; and as Feather either has or will certainly receive the amount of Jackson's debt against Titchenell, it seems but reasonable to suppose from the relations of the parties, joint appellants in this Court, that Titchenell will, if he has not already done so, pay over to Jackson the full amount of his debt.

But all this is matter foreign to the case before us. To justify the decree of the court below it is only necessary to say, that it had no right in its decree in this cause to have protected Jackson against the supposed or probable fraud of his co-defendant Feather by providing for the payment by Feather to him of this debt, when the purchase-money Feather paid for the land was refunded to him by Titchenell. It is well settled, that a decree between co-defendants can only be based upon the pleadings and proofs between the complainant and defendants. (*Vance* v. *Evans et al.*, 11 W. Va. 342.) Under this rule, it is obvious, the Court could not in this case properly render any decree between the co-defendants Feather and Jackson. There is nothing in the bill or in the answer of Jackson, which rendered it necessary or proper in determining the matters in controversy between the plaintiff and the defendants to enquire into or take any proof whatever relative to any controversy between the co-defendants; and the proof on this subject has been merely casually thrown into the record and is, or might under such circumstances be very vague and unsatisfactory. The whole proof, on which it is claimed that a decree even in favor of

Jackson against his co-defendant, Feather, should be based, is simply the following statement by Payne in his deposition:

"Titchenell never offered to pay any of the purchase-money notes which I held until after the second note became due. Soon after this I learned from Jackson that he had bought the land, and if I am not mistaken he receipted to me for the notes, the debt being due to him."

There is no evidence as to the price Jackson was to pay or did pay Feather for this land or anything beyond this vague statement of Payne to show the character of the dealings between them. There being then in the pleadings between the plaintiffs and defendants nothing whatever to call for any sort of detail as to the dealings between the co-defendants beyond the simple fact, that one of them, Feather, had made a deed to the other, Jackson, for this tract of land, upon the rule and law as laid down in *Vance* v. *Evans et al.*, 11 W. Va. 342, it is obvious, that it would have been improper for the court in this case to render any decree between them. And had such decree been rendered, great risk would have been run of doing one or the other gross injustice. All the facts necessary to render a decree between them justly were not before the court. It was neither necessary nor even proper, that these facts should have been proven in this cause, as they were foreign to the purpose of the suit as shown by the pleadings.

The court therefore did not err in not rendering any decree in this case between these co-defendants or in failing to protect Jackson against the supposed or possible wrongs of his co-defendant Feather. If they have not settled all matters between themselves amicably or can not do so, they must settle them in some other suit, in which the facts actually bearing on the matters between them may be properly put in issue and proven. It is possible, this might be done in the original suit brought by Jackson, if it is still pending; and if it is not, or if it can not be done in this cause, it may be done in a suit brought for the purpose by him against Feather or by Feather against him; but however it may be done, we are safe in saying, it can not be done in this cause, and that therefore there was no error in the court below in

its failure to provide any remedy over against Feather in favor of his co-defendant Jackson, in case Feather has been or shall be paid the purchase-money of the land by Titchenell.

The decree of the circuit court, so far as it set aside and declared null and void the deed of September 13, 1881, executed by Feather to Jackson, is affirmed. But the residue of the decree must be reversed because of the errors principally in the manner in which the court has provided for the carrying out of its views, which views are however substantially correct; and this Court in lieu of these provisions should enter a decree, which will provide for carrying out these views in a proper manner. The errors in the court below in this decree of April 19, 1883, consisted in directing a deed from said Feather to Jackson for this land upon or after the payment of the $208.83, but no proper means was provided for ascertaining whether this $208.83 had been paid, or of ascertaining whether it was to be paid at some future time and when. No such conveyance should have been decreed, till the court had ascertained either by the admission of Feather in open court or by a report of the commissioner, that this $208.83 with interest from April 19, 1883, had been paid, and then it should have ordered this conveyance to be made; and that when made, whether made by Feather or by a commissioner appointed by the court for the purpose, it should contain a covenant of special warranty. And as it appeared that the plaintiff had been turned out of the possession of this land, to which he had an equitable title, by his trustee, the circuit court should have ordered, that the said plaintiff forthwith should have a writ of possession of said land, and should not have postponed his right to sue out such writ, until the plaintiff had satisfied this lien on said land in favor of Feather.

The decree therefore of April 19, 1883, must be affirmed in part and reversed in part as above indicated; and the appellants must pay to the appellees their costs in this Court expended, the appellees being the parties substantially prevailing; and this cause must be remanded to the circuit court of Preston to be proceeded with according to instructions, which should be inserted in the decree entered by

this Court, and further according to the principles governing courts of equity.

AFFIRMED IN PART.  REVERSED IN PART.