## CHARLESTON.

### SCRAGGS v. HILL.

Submitted January 20, 1893.—Decided April 1, 1893.

1. COVENANT—DISMISSION—ASSIGNMENT—CANCELLATION.

Where the agreement upon which an action of covenant is predicated appears to have been assigned to a third party by a written assignment attached thereto, and said written assignment appears to have been cancelled by lines drawn across the same, said agreement being in the possession of the plaintiff, it is error to dismiss his action for want of a formal re-assignment of the agreement before the institution of the suit.

2. COVENANT—DECLARATIONS—CONSTRUCTION OF CONTRACT.

When the language of a written agreement on its face is ambiguous, the courts will look at the surrounding circumstances existing when the contract was made, at the situation of the parties and the subject-matter of the contract, and will even call in aid the acts done by the parties under it, affording a clue to the intention of the parties; but the Court never resorts in such a

case to the verbal declarations of the parties either before, at the time of, or after the execution of the contract, to aid in giving construction to its language.

3. Covenant—Evidence.

The plea of "covenants performed" can only be supported by evidence which shows that the defendant has performed his covenant, and not by evidence showing that his own performance was excused by the act of the plaintiff or any other.

J. E. Chilton for plaintiff in error cited 4 Rand. 266; 5 Gratt. 1; 15 W. Va. 718; Code, c. 99, s. 14; Chitt. Cont. 1365; 3 How. 483; 5 Pet. 580; 11 W. Va. 535.

W. E. Chilton and O. Johnson for defendant in error cited 13 W. Va. 718; 11 W. Va. 535.

English, President :

This was an action of covenant brought in the Circuit Court of Boone county by Samuel Scraggs against A. J. Hill on the 2d day of June, 1886. On the 26th day of July, 1886, the defendant demurred to the plaintiff's declaration, and to each count thereof, which demurrer was overruled by the court, and thereupon the defendant pleaded "covenants performed," and issue was joined thereon ; and on the 18th day of April, 1888, the case was submitted to the court in lieu of a jury, which resulted in a finding for the defendant ; and thereupon the plaintiff moved the court to set aside the finding, and grant him a new trial, which motion was overruled, and the plaintiff excepted. The plaintiff then moved the court to render judgment in his behalf, which motion was also overruled, and the plaintiff again excepted ; and thereupon the court dismissed the plaintiff's action, without prejudice to any other action he or his assignee might be advised to bring.

It appears from the bill of exceptions, which was taken by the plaintiff, that in order to maintain the issue on his part he offered in evidence a certain writing in words and figures as follows :

"An article of an agreement, made and entered into this, the tenth day of June, 1881, between Samuel Scraggs, of the first part, and Sylvester Chambers and A. J. Hill, of the second, part, all of the county of Boone and State of West

Virginia, witnesseth that the said second party agrees to stand responsible for the remaining part which is against the land, for non-payment which now, under a certain contract between J. H. Gray and McNeely, on the Scraggs lands on Camp creek for all the poplar timber, also the poplar timber on A. J. Hill's farm on the river, is now agreed that the timber on both places is to satisfy the remaining payments now against it, and, if it should fail to satisfy, the said Chambers is to pay twenty five dollars, and A. J. Hill the remainder of the unsettled part which is now against the land up to this date, June 10th, 1881.

"Witness our hand and seals.

"SYLVESTER CHAMBERS.   [Seal.]

"A. J. HILL.           [Seal.]"

To which writing was attached a paper with an assignment thereon from Samuel Scraggs to Samuel Scraggs, Jr., with lines drawn across the same.

The plaintiff introduced Sylvester Chambers as a witness, and proved by him that he and Hill signed the said agreement; that, before the time said agreement was signed, he (Chambers) had purchased a certain tract of land from one James H. Gray, which Gray had purchased from the plaintiff, Scraggs, and that A. J. Hill had also purchased from said Gray a tract of land which Gray had purchased from Scraggs; that Scraggs had not conveyed either of said tracts of land to Gray, and still held the legal title; that Scraggs represented there was three hundred dollars still due him on the tract of land sold by Gray to A. J. Hill and witness, and refused to make a deed to Hill until the purchase-money was secured; and that Scraggs then said there was enough timber on the land to pay for the balance of the purchase-money, and that the said agreement was executed by the parties thereto, and delivered to Scraggs; and that Scraggs then made to A. J. Hill a deed for the land; and that, between one and two years before that, witness and Scraggs had counted the trees on both tracts of land, and there were three hundred and fifty trees in all, big and little; but witness was not careful, and did know whether all the trees counted were merchantable or not, and he thought they all were not good trees, but that the greater part were merchantable.

The plaintiff also offered himself as a witness, and proved that, on the day the said agreement was executed, the said defendant and one Sylvester Chambers came to · him to make a deed to Hill for the land Gray had traded to Hill, and that Gray then owed him three hundred and ninety four dollars and twenty five cents thereon, and that he refused to make it until his debt was paid or secured—and that Hill and Chambers executed to him the said agreement, and that he then executed said deed to Hill; that, under this agreement, whatever amount was left on said purchase-money after the timber McNeely got under his contract with Gray was credited thereon, and was to be paid by Chambers and Hill, Chambers paying twenty five dollars thereof, and Hill the balance; that said twenty five dollars had been paid, and that said Hill had not paid anything thereon; that he had no recollection of saying there was enough timber on the land to pay the debt, and knew nothing about the timber on the river one hundred acres, and had no recollection of saying that there was only three hundred dollars due on the land; that afterwards, on the 24th day of June, 1882, he, by a written assignment, attached to said contract, assigned the same to his son, Samuel Scraggs, Jr.; that afterward Samuel Scraggs, Jr., told plaintiff that he would not be annoyed with the contract, and he (witness) might attend to it, and could collect it if he wanted to; that this was before the institution of this suit; that said Samuel Scraggs, Jr., had not made any assignment of this contract back to him, but that he thought, as the land belonged to him, he should have the money.

The plaintiff also read in evidence the following agreement between James H. Gray and G. J. McNeely:

"This agreement made and entered into this, the 26th day of May, 1880, by and between J. H. Gray, of Kanawha county and State of West Virginia, party of the first part, and G. J. McNeely, of Boone county and State aforesaid, party of the second part, witnesseth that, for and upon the conditions hereinafter set forth, the said J. H. Gray, party of the first part, has this day bargained and sold to G. J. McNeely, party of the second part, all the poplar trees on the Sam Scraggs and Andrew Hill farms in Boone county; and the

consideration of the above sale to said Gray of trees shall be one dollar per tree for timber on said Sam Scraggs farm, and one and one half dollars for timber so sold on Andrew Hill farm. The conditions of said sale are as follows, to wit: The said G. J. McNeely, agrees to take trees that are merchantable; and it is further agreed that said timber shall be paid for before removed from the bank of Little Coal river.

"In witness whereof, the parties have hereunto set their hands and seals, the day and date as aforementioned.

"James H. Gray. [Seal.]
"G. J. McNeely. [Seal.]

"Witness: J. W. Kennedy."

The plaintiff also proved by G. J. McNeely that he was the party to the said contract with J. H. Gray; that, under said contract, he had cut sixty merchantable trees off of the upper tract of land named in said contract, and eleven trees off of the lower tract or A. J. Hill tract, and these were all the merchantable trees on either of said tracts.

The defendant introduced several witnesses whose testimony tended to show that plaintiff had agreed to look to McNeely and the timber on the land for his debt; but as there seems to be some conflict in the testimony upon this point, and as the bill of exceptions fails to certify that it contains all of the facts proved or evidence offered, it is regarded as immaterial.

It appears that the court, in dismissing the plaintiff's action, assigned as a ground for so doing the fact that the claim had been assigned to said Scraggs, Jr., and had never been re-assigned to plaintiff, and that the plaintiff was not at the date of the institution of said suit the owner thereof, and could not maintain said action; and this action of the court is the first error relied on by the plaintiff in error.

The fact appears in the record that the agreement, upon which the action was predicated, had been assigned by the plaintiff to Samuel Scraggs, Jr., which assignment was evidenced by a writing attached thereto; and, although said written assignment does not appear as a part of the record, it does appear that lines were drawn across the same which would indicate that the assignment had been

cancelled. The plaintiff, in his testimony, says, in regard to this assignment, that on the 24th day of June, 1882, he, by a written assignment attached to said contract assigned the same to his son, Samuel Scraggs, Jr., and that afterwards said Samuel Scraggs, Jr., told plaintiff that he would not be annoyed with the contract, and that plaintiff might attend to it, and that he could collect it if he wanted to ; that this was before the institution of the suit, and that said Samuel Scraggs, Jr., had not made any assignment of said contract back to him, but he thought, as the land belonged to him, that he should have the money.

Now, if it be conceded that the claim on which this action was predicated had been assigned by the plaintiff to Samuel Scraggs, Jr., and had never been re-assigned, can we say that the circuit court committed no error in finding for the defendant, and dismissing the plaintiff's action ?

At the common law we find, by reference to Chitty on Contracts (10th Amer. Ed. p. 133) : "The action at law must always be brought in the name of the assignor of a chose in action, unless the debtor has promised to pay the assignee ; the assignment authorizing the assignee to use the assignor's name in all necessary legal proceedings. Upon the decease of the assignor the assignee may sue in the name of the executor or administrator."

Parsons on Contracts (3d Ed., vol. 1, p. 195) states the law as follows : "Courts of law also permit and protect assignments of choses in action to a certain extent. If the debtor assent to the assignment, and promises to pay the assignee, an action may be brought in the name of the assignee in his own name ; but otherwise he must bring it in the name of the assignor." And again, as to the manner of assignment, the same author says, on page 197 of the same volume : "It was once held that the assignment of an instrument must be of as high a nature as the instrument assigned. But this rule has been very much relaxed, if not overthrown ; and, indeed, it has been determined that the equitable interest in a chose in action may be assigned for a valuable consideration by a mere delivery of the evidence of the contract, and it is not necessary that the assignment should be in writing." And in the note (e)

it is said : "There are cases in the old books which show that debts and even deeds may be assigned by parol, and we are satisfied that there is no sensible ground upon which a writing shall be held necessary to prove the assignment of a contract, which assignment has been executed by delivery, any more than in the assignment of a personal chattel"—citing *Jones* v. *Witter*, 13 Mass. 304; *Dunn* v. *Snell*, 15 Mass. 481, and many other cases.

Whether the assignment, in the case under consideration, by the plaintiff to his son, was made for any valuable consideration, does not appear, and I do not know that it is material that it should ; but it does appear that, before the institution of the suit, the plaintiff was authorized to collect it, and the written assignment made by plaintiff was cancelled by lines drawn across it, and the plaintiff appears to have been in possession of said contract, and to have offered the same in evidence.

It is evident that our statute (chapter 99, § 14, Code) merely conferred upon the assignee a right which he did not before possess under the common-law when it provides that the assignee of any bond, note, account or writing not negotiable may maintain thereupon any action in his own name, without the addition of "assignee, which the original obligee or payee might have brought," *etc.*; but the right so conferred must be regarded as merely cumulative, and does not in any manner detract from the remedy prescribed under the common-law.

At the time this suit was brought, then, it appears that the plaintiff was in possession of the contract sued upon, with assignment cancelled (by whom we are not informed) and with a verbal authority to collect the same. It is true that the plaintiff states that Samuel Scraggs, Jr., had not made any assignment of this contract back to him; but what he evidently meant by that was that his said son had not made a formal written assignment, and, as we have seen, that was not necessary in order to authorize the plaintiff to maintain the action, and under the authorities above cited, and under the circumstances shown by the evidence, the suit was properly brought.

In the case of *Whitteker* v. *Gas Co.*, 16 W. Va. 717, it was

held: "It is well settled that where a chose in action, such as a bond, note, or accepted order on a third person, is transferred and delivered to a creditor as collateral security for a debt, it is the right of the debtor to sue upon such chose in action at law, and, if necessary to use the name of the legal owner of such chose in action."

So, also, it was held in the case of *Clark* v. *Hogeman*, 13 W. Va. 718, that "the assignee of a note or draft does not acquire the legal title to the debt, but an equitable right, which, by virtue of the statute, he may assert at law in his own name, or in that of the original payee for his benefit; and it is not necessrry that the record should show that the suit is for the benefit of the assignee."

These authorities we regard as sufficient to show that no error was committed in instituting the action in the name of Samuel Scraggs, Sr.

It is insisted by counsel for the defendant in error that no action can be maintained on the contract sued on, because the same is void for uncertainty. It can not be denied that the contract is to some extent uncertain and ambiguous; but under the authorities, we may read it in the light of surrounding circumstances, and if, reading it thus, its meaning may be gathered, the same will be enforced.

From the face of the paper it appears that Sylvester Chambers and A. J. Hill agreed to stand responsible to Samuel Scraggs for the remaining part which was against the land, and the scrivener then intended to say, "which had not been paid under a certain contract between J. H. Gray and McNeely for all the poplar timber on the Scraggs lands on Camp creek; also the poplar timber on the A. J. Hill farm on the river: It is now agreed that the poplar timber on both places is to satisfy the remaining payments now against said land. If it should fail to satisfy, the said Chambers is to pay twenty five dollars and O. J. Hill the remainder of the unsettled part which is now against the land up to this date, June 10, 1881."

In the case of *Titchenell* v. *Jackson*, 26 W. Va. 469, GREEN, Judge, delivering the opinion of this Court, says: "It is true that this memorandum is on its face ambiguous, and, unaided by any parol evidence, it would be, if not unintel-

ligible, at least so doubtful in its meaning that it could not be deemed a declaration of a trust in favor of Titchenell; but it may be regarded as well settled that, when the language of a written agreement is susceptible of more than one interpretation—that is to say, is on its face ambiguous—the courts will look at the surrounding circumstances existing when the contract was made, at the situation of the parties, and the subject-matter of the contract, and will even call in aid the acts done by the parties under it, as affording a clue to the intention of the parties; but the Court never resorts in such a case to the verbal declaration of the parties either before, at the time, or after the execution of the contract, to aid it in giving construction to its language." See *Crislip* v. *Cain,* 19 W. Va. 483, and authorities there cited.

The circumstances disclosed by the evidence that may be considered in interpreting this contract are that James H. Gray had purchased from the plaintiff, Samuel Scraggs, two tracts of land situated in Boone county, but had not conveyed either of said tracts to said Gray. McNeely had agreed to purchase from Gray the poplar timber on both of said tracts, and was to pay him one dollar per tree for the timber on the Scraggs farm, and one dollar and fifty cents for the timber on the Hill farm; and, after contracting said timber to McNeely, said Gray sold one tract of said land to Chambers, and the other tract to Hill. Said Chambers and Hill demanded a deed from Scraggs, which he declined to make, unless they bound themselves to pay the balance due on said land from Gray to him. As to the demurrer to the declaration, it will be noticed that profert was made of the contract sued upon, and that oyer of the same was not craved by the defendant, so that upon demurrer the defendant could not say that the contract was insufficient to base an action upon.

The only plea interposed in this case was that the defendant had truly performed the covenants alleged by the plaintiff to have been broken, and that he had complied with the conditions thereof. The defendant agreed to stand responsible to the plaintiff for the remainder that was against the land after deducting twenty five dollars, which

was to be paid by Chambers, and the proceeds of the poplar timber on the Scraggs lands on Camp creek, and on the A. J. Hill farm on the river, the former at one dollar per tree and the latter at one dollar and fifty cents per tree.

Barton, in his Law Practice (page 143, § 10) says: "This plea can only be supported by evidence which shows that the defendant has performed his covenant, and not by evidence showing that his own performance was excused by the act of the plaintiff or any other."

The defendants have failed to sustain said plea by evidence, and our conclusion is that the Circuit Court erred in refusing to set aside its finding, and grant the plaintiff a new trial, and for these reasons the judgment is reversed, the finding set aside, a new trial awarded, and the cause remanded.

REVERSED.  REMANDED.