# CHARLESTON.

## RALEIGH LUMBER CO. *v.* WILSON & SON.

Submitted June 11, 1910.    Decided October 24, 1911.

1. CONTRACTS—*Construction—Extrinsic Matters.*
    To ascertain the intent of the parties to a contract, respecting a portion thereof, stated in general and indefinite terms, reference may be had to the subject matter, the situation of the parties, their aims and purposes and the circumstances, as well as the other provisions of the contract.    (p. 603).

2. LOGS AND LOGGING—*Sale of Lumber—Construction of Contract.*
    Under a contract of sale of a large quantity of lumber by a manufacturer thereof to a dealer for re-sale in the market, providing for certain percentages of the entire quantity in certain lengths, and stipulating for widths by the use of the phrase "4 to 12" wide", the vendor is bound to furnish in all large shipments reasonable percentages of all widths and lengths covered by the contract, if demanded by the vendee.    (p. 603).

3. SAME—*Sale of Lumber—Performance of Contract.*
    In such case refusal of the vendor to deliver a portion of the amount sold, because the vendee declined to receive a large por-

tion of it in a single installment containing only narrow and short boards, constitutes a breach of the contract.    (p. 605).

4.  SALES—*Action for Price—Set-off—Profits.*

Gains or profits of the vendee prevented by such breach may be recouped in an action for purchase money of the lumber furnished under the contract.    (p. 605).

5.  CUSTOMS AND USAGES—*Effect on Contract.*

In an action involving the interpretation of a contract, a custom or usage, consistent with the terms of the contract, peculiar to the subject matter thereof, known to the parties, and probably intended to be included in the contract, as shown by their situation and purposes, the nature of the subject matter and the attendant circumstances, is admissible in evidence.    (p. 604).

6  WITNESSES—*Examination—Assumption as to Facts.*

If, on the trial of an action for damages, for a breach of contract, the breach appears as matter of law from undisputed facts and circumstances, the court may permit an attorney, in examining witnesses as to the *quantum* of damages, to assume the existence of the breach.    (p. 605).

Error to Circuit Court, Ohio County.

Action by the Raleigh Lumber Company against William A. Wilson & Son.  From the judgment, plaintiff brings error.

*Affirmed.*

*Hubbard & Hubbard,* for plaintiff in error.

*Russell & Russell,* for defendants in error.

POFFENBARGER, JUDGE.

The plaintiff in error complains of the allowance of a deduction, by way of recoupment, of about $400.00 from the amount claimed in its action of *assumpsit* against the defendants in error, to recover the purchase price of lumber sold and delivered to them.  The matters in difference were submitted to a jury and most of the numerous assignments of error relate to rulings made in the course of the trial, all of which will be better understood after a statement of the facts and the positions assumed by the parties.

The plaintiff, engaged in the manufacture and sale of lumber, undertook to furnish the defendants, general dealers in that commodity, 400,000 feet of two inch hemlock lumber, with-

in the reasonable period of about four months. The contract was evidenced by letters. Before any lumber had been delivered or accepted under it, a controversy arose as to the mode of execution. While all the lumber was to be two inches thick, different lengths and widths were provided for or contemplated. On the 10th of November, 1905, the plaintiff tendered to the defendants 166,239 feet of lumber, ranging from 10 to 18 feet in length, but having only two widths, namely, four inches and six inches. Near the same time, the defendants made an order on the plaintiff for 157,000 feet, ranging in lengths from 10 to 20 feet, and in widths from 4 to 12 inches. The offer and order were both by letter and passed each other in transmission. The defendants declined to accept the lumber offered, but said so much of it as was covered by their order for lumber, about 30,000 feet, would be received. Thereupon the plaintiff gave notice of its intention to sell this particular lumber to other parties and deduct it from the amount which it had obligated itself to furnish the defendants. Against this there was a protest, and thereafter lumber was furnished and accepted from time to time until the defendants had received about 263,000 feet. The plaintiff refused to deliver any more, and the defendants, insisting that the contract had not been fully performed, demanded an additional 137,000 feet, at the prices stipulated in the agreement, and gave notice of their intention to claim damages for breach of the contract in the case of refusal on the part of the plaintiff. Confident of the correctness of its interpretation of the contract and lack of any breach on its part, the plaintiff declined to furnish more. At the time this action was brought, all of the purchase money for the lumber actually delivered had been paid except $965.75. Estimating their damages at $473.74 and interest, the defendants paid into court $511.69, and declined to pay the balance. They filed with their plea an account, designated as one of set off, claiming the difference between the contract prices of the undelivered lumber and the subsequent market prices within the life of the contract. The judgment, conforming to the verdict, was for $61.69.

The most important provisions of the written offer and acceptance, constituting the contract, read as follows: "In ac-

cordance with our talk with your Mr. Smith, this A. M., we propose to furnish you 400 M ft. of 2″ Hemlock lumber, 10 to 20′ long and 4 to 12″ wide, in about the following proportions: 35% 14′ and under long; 35% 16′ long; and 30% 18 and 20′ long." The reply was: "In reference to proposition made our Mr. Smith in confirmation of same under date of the 30th ult., beg to state that we will accept your proposition to furnish us 400,000 ft. 2 in. hemlock sizes, as enumerated in your letter and also at the price which you made." The third letter says: "We have your favor of Oct. 2, and have entered your order for the 400 M ft. of 2″ Hemlock." It further appears from this correspondence and other evidence adduced that the plaintiff expected to furnish the lumber in installments as manufactured within about four months; that the defendants desired a larger percentage of 18 and 20 foot lumber than the contract provided for; and that the plaintiff knew the defendants were general dealers in lumber, buying to resell, not to store for use. A condition of the contract named in the first letter was that shipping directions should be furnished as fast as the stock should be ready for loading. The defendants bound themselves to remove it as fast as it should be prepared for shipment.

The defendants refused the lumber tendered Nov. 10, 1905, because, in their opinion, it contained an undue percentage of short lengths and narrow widths, protesting their inability to handle the lumber in that form advantageously, and insisting upon their right to a reasonable percentage in each installment of all widths and all lengths, to enable them to dispose of the lumber in the market as the market called for it. They further insisted that the narrow widths and short lengths were the less desirable portions of the lumber contracted for, and not saleable at a fair price, unless mixed with lumber of greater dimensions in length and breadth. The contract allowed 140,000 feet in short lengths. The lumber of these lengths tendered as the first installment amounted to about 104,000 feet. As stated, it had only two dimensions in width, four and six inches. The contract did not guarantee any percentage of any particular width, but it did contemplate lumber ranging in width from four to twelve inches. The plaintiff insisted upon its right to furnish its full percentage of any length all at one time and any

width it saw fit. As the material facts are practically uncontroverted, the construction of the contract was a legal question which no doubt the court would have settled, had it been called upon to do so. The settlement of that question will dispose of practically all of the assignments of error.

We have said the defendants were dealers in lumber, buying to resell in the market. The evidence fully establishes this. Presumptively, the plaintiff knew it, but we are not left to mere presumption. The letter of acceptance clearly indicated it, saying "You are no doubt aware that on an ordinary order the percentage of 18 and 20 ft. stock is usually a little more than 14 ft. and under," and again, "We are just completing an order of two million feet of hemlock now, we had with one mill this summer." Before these letters were written, the agent of defendants conferred with plaintiff's representatives and the contract was then made. The conversation between them is not in the record, but it must be presumed that, in making a contract for six or eight thousand dollars worth of lumber, the plaintiff previously obtained some knowledge of the character and business of the vendees. It must have known, therefore, the disadvantages to the vendees of the kind of performance it offered, and that no such thing was contemplated by the latter in entering into the agreement. In undertaking to furnishing them with lumber for sale in the general market, it impliedly, if not expressly, agreed to furnish the lumber in a condition suitable for disposition in the general market. The specifications of widths and lengths and percentages of lengths fairly indicate the kinds of lumber desired and expected by the defendants. The failure to stipulate for certain percentages of widths was clearly not a waiver of all right on the part of the vendees in respect to that. Nothing in the contract or circumstances indicates intent on their part to make a one-sided contract in regard to widths. They stipulated as positively for twelve inch widths as for four inch widths and also for the intermediate widths. The nature and purpose of the contract and all the circumstances must be taken into consideration. Failure to stipulate for quantities of certain widths left the plaintiff free from obligation to furnish any certain percentage of the lumber in any width, and prevented the defendants from demanding it,

but the latter were entitled to have, and the former was bound to furnish, reasonable percentages of the lumber in all of the widths contemplated, and in all of the installments in which deliveries were made. What would have been a reasonable percentage would have been a question of fact for a jury had a controversy arisen involving that question.

If the language of a contract or agreement is on its face ambiguous, the courts will look at the surrounding circumstances, at the situation of the parties and the subject matter of the contract, for aid in giving a construction to its language. *Titchenell* v. *Jackson,* 26 W. Va. 460; *Heatherly* v. *Bank,* 31 W. Va., 70; *Caperton's Admr.* v. *Caperton's Heirs,* 36 W. Va. 70; *Scraggs* v. *Hill,* 37 W. Va. 706; *Shrewsbury* v. *Tufts,* 41 W. Va. 212; 9 Cyc, 587. The court is not limited in the interpretation of the contract to the mere letter of its words. Its spirit and purpose may be considered. We may here repeat the observation made in *Gas Co.* v. *Oil Co.,* 56 W. Va. 402, "This method of interpreting the contract may, to some extent, seem to go beyond its terms, in dealing with them in the light of the subject matter, the situation of the parties, the purpose of the contract, the attendant circumstances and the conduct of the parties, but, when the terms of an instrument are uncertain or indefinite, it.is proper to do so." That which is not inconsistent with the terms of a written contract and plainly within its purpose, as indicated by the situation of the parties and all the circumstances, may be supplied, or treated as included in it. Such construction does no violence to the terms of the contract. This agreement is silent upon the sujebct of percentages of widths. From this a mere slight implication arises against the conclusion here stated, but it is only an implication, and, being such, the plain intent of the parties, deduced from their purposes, their situation and all the circumstances, completely overthrows it. "Where a manufacturer contracts to sell to a dealer or middleman, who buys, as the manufacturer knows, to sell again, there is an implied warranty on the part of the manufacturer that the thing sold shall be reasonably fit for the purpose for which it is made and for which the dealer intends to sell it." 12 A. & E. Enc. L. 1235. Of course this relates to quality, but it applies the principle here enforced. Though perhaps not so

material as quality, assortment or condition was, under the circumstances of this case, vital to the vendees. Absence thereof deprived them, in large measure, of the benefit of their contract.

Under the designation of "custom," the defendants were permitted to prove that, in the execution of such contracts as the one involved here, the buyer demanded and the seller furnished the lumber in installments, containing reasonable percentages of the lengths and widths contemplated. Their knowledge of the subject was derived chiefly from their own practice and experience in the business. This evidence was objected to on the ground that the witnesses had not shown themselves qualified to testify to it as a usage or custom and also that it failed to prove one. The designation of the evidence as that of custom, usage or practice was, to some extent, a misnomer and misinterpretation of it. To a very considerable extent, it was proof of the market conditions contemplated by the contract and in view of which it was made. The witnesses stated these conditions and their experience under them. If, however, they correctly designated the practice, and it amounted to a usage or custom, they were qualified to testify on the subject, by their experience and knowledge. Smith said he had had experience with the saw-mill people of every state. W. A. Wilson's testimony showed extensive experience in the lumber business and great familiarity with timber and lumber transactions. Moreover, his competency seems not to have been questioned. The custom, usage, experience, description of methods of manufacture, shipment and sale, or whatever it may be, strictly considered, harmonizes with the legal construction of the contract, and was relevant, material and admissible.

An exception was taken to the action of the court in sustaining an objection to a question, asking a witness whether there was a custom, giving the buyer right to dictate sizes to be shipped, in the case of a contract like the one in question. Though the court sustained such an exception, the question was re-propounded in different form and answered. The action of the court in sustaining an objection to a question of the same kind relating to the first shipment under such a contract, is also complained of. The cross-examination on this subject was very lengthy and

the questions propounded in numerous ways. A great many answers were given, some of which we think would cover this question. Whether they do or not, the defendants were not prejudiced by this ruling. Nor was there any error in refusing to strike out the witness's answer, saying he never knew "a mill man being so unreasonable as to insist upon furnishing any one width to the exclusion of others." That purported to give the witness's experience. The question was evasive, but its substance not material. The witness afterward answered the question to the best of his ability. Exceptions were taken to the action of the court in allowing a witness, in explanation of the objection to the plaintiff's first offer of lumber, the one giving rise to the controversy, to show what that offer ought to have contained to make it conform to the contract. What we have said on the subject of the interpretation of the contract shows these rulings were not erroneous. Exceptions were also taken to the action of the court in allowing counsel, in the examination of witnesses, in two instances, to assume that the contract had been broken by the plaintiff. Our conclusion as to the interpretation of the contract sustains these rulings. As a matter of law, it did break the contract, hence the court did not err in allowing counsel to assume the existence of the breach.

Numerous objections were made to testimony tending to prove the difference between the contract prices of the lumber and the market prices, when it should have been delivered or was demanded and refused, as showing what profits the defendants lost in consequence of the plaintiff's breach of the contract. All of these exceptions, as well as others based upon the action of the court in refusing to direct a verdict for the plaintiff for the amount of its claim and to set aside the verdict, were founded upon the view that the deducted claim was not a proper subject of set-off, it being a claim for unliquidated damages. Though called a set-off, it was really a claim of recoupment. It was not a debt due the defendants, growing out of a different transaction and founded upon a consideration other than the contract out of which the controversy arose, constituting a proper subject of set-off. It was for damages growing directly out of a breach of the contract sued on. Hence, it was a claim for recoupment, not one of set-off. This being so, the character of the damages,

whether liquidated or unliquidated, was wholly immaterial. Unliquidated damages may be proved under a claim of recoupment. *Railroad Co.* v. *Jameson,* 13 W. Va. 833. The erroneous designation of the claim as one of set-off does not change its character, nor prevent allowance thereof. Courts determine the character of claims or notices by their substance rather than names. The notice gave full information of the nature of the claim, apprising the plaintiff thereof. This in the record, there could be no surprise, prevention of which is the sole purpose of a notice of recoupment.

Seeing no error in the judgment, we affirm it.

*Affirmed.*