# CHARLESTON.

HINKLE *v.* NORTH RIVER INS. COMPANY.

Submitted September 12, 1911.   Decided April 16, 1912.

1. INSURANCE—*Actions on Policies—Pleading.*
    The defence allowed an insurance company by code of 1906, ch. 125, sec. 64, by filing a statement that the company will rely on breach of condition, warranty or clause of the policy, is not to be made by plea in abatement, and need not be filed at rules, but may be filed at any time before trial.   (p. 683).

2. SAME.
    Such statement may be filed without the general issue or plea provided for in that section of the code, that the company is not liable on the policy. (p. 683).

3. SAME—*Adjustment of Loss—Statutory Provisions.*
    The act, ch. 33, acts of 1899, published in code of 1906, serial section 1108, has not been repealed, and under it where the loss of a house by fire is total, the insurance company has no right to demand arbitration of the amount of loss, though the policy provides for it.   (p. 684).

4. SAME—*Extent of Loss—Valued Policy.*
    Under a fire insurance policy, to make a loss by fire total under the valued policy act, the building need not be utterly de-
    70 W. Va.

stroyed and extinguished. If its identity is gone, if its remnant can not be used as a basis of repair or restoration, the loss is total, calling for full payment of the amount of insurance fixed by the policy.   (p. 684).

Error to Circuit Court, Randolph County.

Action by Rebecca Hinkle and others against the North River Insurance Company. Judgment for plaintiffs, and the Insurance Company brings error.

*Affirmed.*

*Talbott & Hoover, Hartwell Cabell* and *Arthur S. Dayton, Amici Curia,* for plaintiff in error.

*James Coberly,* and *Cunningham & Stallings,* for defendant in error.

BRANNON, PRESIDENT:

Rebecca Hinkle and C. E. Madison sued the North River Insurance Company to recover for loss from the burning of a frame building, under an insurance policy issued by that company, and upon a motion to strike out the plaintiff's evidence and a demurrer to that evidence, judgment was rendered for the plaintiffs, and the insurance company sued out a writ of error.

The company filed a notice or statement that the defence would be noncompliance with, and violation of, certain conditions, clauses and warranties of the policy, among them the clause that in event of disagreement as to the amount of loss it should be ascertained by arbitration. It is suggested by counsel that this defence could only be made by plea in abatement at rules, whereas, the statement or notice was filed in term, and came too late. *Riley* v. *Jarvis,* 43 W. Va. 44, is vouched for this. In that case there was an action before a justice and an arbitration pending in it, and in another action a plea of the pending of the action before the justice and arbitration in it was held a plea in bar and too late after other pleas in bar, had been filed and that it was a plea of another action pending, that is, in ·abatement. So that case does not sustain the point. And besides the code of 1906, ch. 125, sec. 64, serial sec. 3884, gives right to file such notice or statement of defence, not prescribing that it

shall be by plea in abatement, or fixing time of filing, but intending that it may be filed at any time before trial.

The company did not file the plea allowed in sec. 64, code of 1906, ch. 125, that it was not liable to the plaintiffs, which plea in *Rosenthal* v. *Ins. Co.,* 55 W. Va. 238, we called, and we now call, the statutory general issue in insurance cases; and counsel argue that this precludes the company from the benefit of the statement which it did file. As we said in that case the code for simplicity directs what pleading may be used in actions on insurance policies. It allows such notice merely. We admit that in actions generally there must be an issue; but there is an issue from that statement. The statute after providing for such general issue says, "But if in any action on a policy of insurance the defence be that it cannot be maintained because of failure to perform or comply with, or violation of, any clause, condition, or warranty" of the policy, then the defendant must file a statement specifying the particular clause, condition or warranty not complied with or broken. This would seem to say that when this is the case the general issue will not do, but there must be this specification; in fact, it seems to dispense with the general plea when breach of a condition is relied on. We do not think that the technical rule that there must be a plea to form an issue, even though the trial be on the merits as if such plea had been filed, ought to be applied in such a case. We said in *State ex rel.* v. *County,* on p. 678, that is a harsh rule where there has been a full trial as if a plea were in, though we could not avoid adhering to it in *Good* v. *Town,* 65 W. Va. 13; but we are not disposed to enlarge it and apply it in this case against the true intent of the statute. The general plea would not suit in this case.

The pivotal question in this case rests upon the clause of the policy providing for arbitration in case of disagreement as to the amount of the loss from fire. The policy provides that no suit should be brought on it until after compliance by the insured party with all requirements of the policy. The insurance company and the insured party disagreed as to the amount of loss, and the company demanded an arbitration, and the insured refused it, saying that the loss was total, and there was nothing to arbitrate. Should the court have dismissed the suit

for the refusal of the insured to agree to arbitration? Was the loss total? If it was, does that deny right to the company to demand arbitration? Was the loss total? The frame building was 48 feet long, 22 feet wide, two stories. The front lower room 29 feet long intended for a feed room, but empty at the time; the back part as a dining room and kitchen; the upper story as a residence. The fire started in the dining room or kitchen. It destroyed the rear of the house, so that the roof over that part fell in and the balance charred and damaged.

It burned the counters and shelves in the store room and otherwise damaged that room. It burned through the sides in places, so that a neighboring building caught fire from it. Part of the roof, though damaged stood up. Witnesses, two experienced carpenters and contractors for building houses, declared the building was left a mere shell, worthless for repair, not usable as a basis for repair. The remnant was torn down, not used in repair or rebuilding, condemned by the town authorities, and torn down. In law the loss is total if the house must be rebuilt; but if it can be repaired, the loss is partial. In *Providence Ins. Co.* v. *Board,* 49 W. Va. 360, it held that if the remnant is reasonably adapted for use as a basis on which to restore the building, the loss is not total, and whether it is so adapted for repair depends on the question whether a prudent owner, not insured, desiring such a structure as the house was before the injury, would in restoring it utilize such remnant as a basis. The evidence from experienced carpenters and contractors and others is very clear that the remnant of this house could not be used—was worthless for that purpose. There is no evidence to dispute this. To make the loss total it is not necessary that the fire entirely destroys and works an extinction of the house. There is a total loss where the building is substantially destroyed, though some of the walls still stand. There is a total loss where the property has lost the character in which it was insured and rendered useless for that purpose, and its remains are practically useless for repair or reconstruction. 19 Cyc 833. There was evidence that it would cost more to use the materials left than to use new material, which fact shows the loss total. It is the building that is insured, not its materials. Has it lost its identiy for use? 13 Am. & Eng. Ency. Law, 323:

A dwelling house is totally destroyed though the stone foundation and sills and first floor are practically intact, and there is no question for the jury, as the building has lost its identity as such; and the fact that some material remains in a more or less injured condition will not prevent the loss from being total. *Lindner* v. *St. Paul Ins. Co.,* 56 L. R. A. 787, note.     See *Hamburg* v. *Garlington,* 56 *Id.* 787.

Next comes the question, Though the loss was total could there be, as there was, recovery of the full sum of insurance fixed by the policy?     Where no statute otherwise directs the recovery is for actual damage; but in 1899 was passed an act, ch. 33, providing that, "all fire insurance companies doing business in this state shall be liable, in case of total loss by fire or otherwise, as stated in the policy on any real estate insured, for the whole amount of insurance stated in the policy of insurance upon said real estate."     Code of 1906, ch. 34, serial section 1108.     If not repealed it governs this case as the policy was made after its going into force.     But it is urged that it has been repealed by chapter 77, acts of 1907, revising, amending and re-enacting ch. 34, of the code, and omitting this total loss act.     It is said that this act of 1907 is a chapter of the code covering the whole subject of insurance, making it the sole test and repository of insurance law, and thus repealing the act of 1899.     We are cited to *Grant* v. *B. & O. R. Co.,* 66 W. Va. 175, holding that "a later statute covering the whole  matter of an earlier one, not purporting to amend it, and plainly showing it was intended to be a substitute for the earlier act, works a repeal of the earlier act, even though the two are not repugnant in the usual sense."     But by that case and *State* v. *Mines,* 38 W. Va. 126, and *Herron* v. *Carson,* 26 *Id.* 62, it must plainly and evidently appear that the later act was intended as a substitute for the former one.     It does not so appear in this instance.     It was not intended to be the exclusive rule on the subject to use language in *State* v. *Harden,* 62 W. Va. 313. The act of 1907 does not touch that subject of valued insurance policies; it makes no provision touching them.     Can we think that it was intended to repeal so important an act as that of 1899?     It is not expressly repealed, and repeals by implication are never favored, and the presumption is always against the intention to repeal where express terms

are not used. It must appear "certainly and clearly hostile to the former act. If by any reasonable construction the two statutes can stand together, they must so stand." *State* v. *Enoch,* 26 W. Va. 253. The Court said: "The rule of law is well settled, that to repeal a statute by implication there must be such positive repugnancy between the provisions of the new law and the old, that they cannot stand together or be reconciled." Evidently these two statutes can stand together. There is no repugnancy of one with the other; they do not treat of the same subject. The act of 1899 is an independent act, not a part of chapter 34 of the code. It is a special act dealing only with a valued policy, not dealt with by the act of 1907. "The repeal of a special statute must be either express, or the intention of the legislature must be so clear, as to amount to an express direction." *Com.* v. *Richmond, etc. R. Co.,* 81 Va. 365. "When the legislator frames a statute in general terms, or treats the subject in a general manner, it is not reasonably supposed that he intends to abrogate particular legislation, to the details of which he had previously given his attention, applicable to a part of the same subject, unless the general act shows a plain intention to do so." So stated in opinion in *Stuart* v. *Tennant,* 52 W. Va. 573. See *Chesapeake & Ohio* v. *Hoard,* 16 W. Va. 270. This rule is strongly affirmed again in *Clemens* v. *Board of Education,* 68 W. Va. 298. The opinion by Judge Robinson says: "The later general law has a final clause expressly repealing all acts and parts of acts inconsistent with the chapter in which it is contained. Even such general repealing clause cannot abrogate the special provision unless there is real inconsistency. 1 Lewis' Sutherland Statutory Construction, section 256. The inconsistency must be actual and destructive. It must not be simply a difference. For it to prevail, it must be of the character to cause the former special provision to lose all force. In relation to the provision in question there is no such inconsistency between it and the later general law. That law exhibits no glaring implication showing an intention to make it inconsistent with the provision; and certainly there are no direct words to the effect." Thus far there is no repeal of the act of 1899.

Another argument made for the proposition that the valued policy act of 1899 is not law, is that it was repealed by impli-

cation by section 68, ch. 77, acts of 1907, reading as follows: "No fire insurance company shall issue policies on property in this state other than those of the form used by fire insurance companys incorporated under the laws of the state of New York, with such changes and additions as the insurance commissioner may deem proper."

The New York form contains the provision found in the policy, in this case, that is, "This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value." This is said to be in conflict with the act of 1899. Apparently so. And yet we cannot think that the legislature in the general act of 1907 meant to repeal the act of 1899. There is nothing in the 1907 act express on the point. It is only because the New York policy contains the clause calling for only actual damage that this argument of repeal can be made. Probably that clause of the New York policy was not thought of. There is nothing express in the act itself on the subject and we cannot think that such repeal was meant. And note the last words of sec. 68, ch. 77, acts 1907, "with such changes and additions as the insurance commissioner may deem proper," indicating that no repeal of the act of 1899 was intended, as some of the Court suggest. As said above repeal by implication by a later act is only sustained when it is clear that the later act was intended as a substitute. What is said above as to repeal by implication will answer this ground alleged for repeal. The argument is too remote. The conclusion of repeal is reached only by circuitous argument or inference.

So the valued policy act of 1899 being in force, there was no right of arbitration, and the language in the opinion by Judge MILLER in *Bank* v. *Insurance Company*, 55 W. Va. p. 278, is proper in this case: "The language of the act is broad and unambiguous. Under it, the insurance company shall be liable in case of *total loss* by fire or otherwise, as stated in the policy, on real estate insured, for the whole amount of insurance upon said real estate, any provisions in a policy to the contrary notwithstanding. All provisions in the policy in conflict with a valued policy statute are void, and hence a provision for the appoint-

ment of arbitrators in case of loss is ineffective where the property is wholly destroyed. Elliott on Ins. section 318."

A witness, was asked by the defence whether there was not enough of the building standing "to base an estimate as to what it would cost to either repair or replace the building with a new one like it was before the fire," but the court would not allow an answer. This relates only to *cost,* which is immaterial in the case of a valued policy. The cost of restoration is not the question, but the conditions of the remnant. What would such cost show as to the condition of the remnant? Nothing.

For these reasons the judgment is affirmed.

*Affirmed.*