# CHARLESTON.

COUNTY COURT OF BROOKE COUNTY *v.* UNITED STATES FIDELITY & GUARANTY COMPANY.

Submitted December 11, 1923.    Decided January 29, 1924.

1. COVENANT, ACTION OF—*Pleas Available in Action of Covenant on Bond With Collateral Conditions.*

   In actions of covenant on bonds with collateral conditions, the general rule is that the only pleas available to defendant are payment or covenants performed, and if the latter, the time, place and manner of performance must be specified. (p. 445).

2. SAME—*Exceptions to Rule as to Available Pleas to Action of Covenant on Bonds With Collateral Conditions.*

   But this general rule has at least two well recognized exceptions, namely (1) that where the subject comprehends a great multiplicity of particulars, or (2) where the contract is for the performance of matters set forth in another instrument, which matters are neither in the negative nor in the disjunctive, the general rule is not applicable. (p. 445).

3. SAME—*What Defendant in Action on Bond for Performance of Matters Set Out in Another Instrument Must Demand.*

   And where, as in this case, the bond is conditioned for the performance of matters set forth in another instrument, the defendant must demand oyer of the instrument and set forth in his plea the whole substance thereof, in order that it may thus be made to appear that the instrument does not in fact contain such negative or disjunctive stipulations. (p. 445).

4. SAME—*Plea of Non-Damnificatus to action on Bond Not Counting on Breach of Covenant to Save Harmless Rejected, Unless Specifically Setting Forth Facts.*

   Although the bond sued on and the collateral contract covered thereby may contain covenants to indemnify and save harmless the obligee, yet if the declaration does not count on a breach of such covenant, a general plea of non-damnificatus, not being responsive to any issue presented, is properly rejected; and such plea would be bad unless the pleader sets forth specifically how he has saved the obligee harmless. (p. 446).

5.   EVIDENCE—*Order of County Court in Accepting Contract Admissible to Show Terms.*

An order of a county court showing the terms of its acceptance of a proposition covering a particular contract and to which alone its authority to enter into the contract can be referred, when properly authenticated, is admissible in evidence when the question is what the contract really was. The rule applicable to private corporations with reference to strangers is not applicable to the records of such public corporations.   (p. 450).

6.   COVENANT, ACTION OF—*Evidence of Confession and Avoidance Admissible Only Under Special Plea.*

In an action of covenant, a plea of covenants performed can be supported only by evidence of such performance; and in order to admit evidence of confession and avoidance, there must be a special plea presenting that issue.   (p. 453).

7.   SALES—*Measure of Damages for Breach of Contract for Sale and Purchase of Goods.*

In an action for damages for the breach of a contract for the sale and purchase of goods, the true measure of damages is the difference between the contract price of the goods purchased and the market value thereof at the time and place of delivery stipulated in the contract.   (p. 456).

8.   SAME—*Measure of Damages for Breach of Contract to Sell Stipulated Quality of Goods.*

And when the contract relates to the sale and purchase of one of two or more classes or qualities of brick covered by the original proposal of the seller, and the action is for the alleged breach thereof by the seller to furnish that class or quality of brick, the damages recoverable must, as a general rule, be predicated on the difference between the contract price and proof of the market value of the particular class or quality of brick purchased, at the time and place of delivery, and not the price of some other class or quality of material.   (p. 456).

9.   SAME—*Rule as to Measure of Damages for Breach of Contract to Sell Goods Not Obtainable on Market.*

If, however, the particular class or quality of goods purchased can not be obtained on the market, the purchaser may, in a reasonable and prudent way, purchase or procure the nearest substitute therefor and recover the difference between the contract price and the reasonable cost of the substituted goods.   p. 457).

Error to Circuit Court, Brooke County.

Action by the County Court of Brooke County against the United States Fidelity & Guaranty Company of Baltimore, Md. Judgment for plaintiff, and defendant brings error.

*Reversed and new trial awarded.*

*Caldwell & Caldwell* and *Frank W. Nesbitt,* for plaintiff in error.

*Ramsay & Wilkin,* and *Erskine, Palmer & Curl,* for defendant in error.

MILLER, JUDGE:

Plaintiff's action was covenant against the United States Fidelity & Guaranty Company alone, upon the bond of the Mack Manufacturing Company as principal and the defendant as surety in the penalty of twenty thousand two hundred and forty-nine dollars and thirty-one cents ($20,-249.31), to the payment whereof well and truly to be made they bound themselves, their successors and assigns *jointly and severally* firmly bound by those presents.

The bond recited the fact that the Mack Manufacturing Company, principal, had been awarded by plaintiff the contract to furnish brick block for the permanent improvement of two certain roads in said county, known respectively as the River Road, lying between Steubenville Bridge and the Hancock County line, and the Wellsburg and Bethany Pike Road, lying between the city of Wellsburg and the town of Bethany, and that plaintiff and said Mack Manufacturing Company had on November 1, 1916, entered into a contract respecting the furnishing of said brick block; and the condition annexed thereto was that if the said Mack Manufacturing Company should well and truly perform in all its parts the contract aforesaid entered into and thereto prefixed, and all the covenants, agreements and stipulations therein contained upon its part to be performed and fulfilled, and should at all time fully and completely keep, perform and comply with and carry out in accordance with the above men-

tioned contract and the true intent and meaning thereof, and *should save harmless* from any and all damages that might accrue to any person, persons or property by reason of the carrying on of said work or any part thereof, or by reason of the negligence of the said Mack Manufacturing Company, or any person or persons under its employ and engaged in said work, then this obligation should be void, otherwise to remain in full force and effect. And the said bond finally provided that the said defendant "shall not be released from any liability on this bond by any act or thing which would not equally release the said Mack Manufacturing Company."

The contract prefixed to said bond, after reciting the publication of said county court inviting bids or proposals for furnishing brick paving block according to specifications made a part of the contract for improving said roads, and pursuant thereto the proposal of said Mack Manufacturing Company to furnish said materials delivered f. o. b. cars at an available railroad siding nearest the location where said brick block were to be used for improving said roads, further stipulated that the said Mack Manufacturing Company would deliver said brick block according to the order of the contractor performing the work of improving said roads, and without unnecessary delay in the shipment thereof.

And on the part of the plaintiff it was stipulated that it would pay the said Mack Manufacturing Company the unit price bid, and thereinafter referred to in the following manner: "Said engineer shall, between the first and tenth days of each month during the progress of the work, make up an estimate of the amount of brick block which has been delivered to the paving contractor who is performing the work of improving said roads, during the preceding month, and compute the value thereof, certifying the same to the county court, who will, on or before the 20th day of each month, pay to the party of the second part ninety per cent of the amount of such estimate, retaining ten per cent thereof until the work under this contract shall have been fully completed and approved by the said engineer and accepted by said county court."

The unit prices named in the said proposal, referred to and made a part of the contract, was as follows:

"1.  74446 Sq. Yd. No. 1 Block (42 to Sq. Yd.) per Sq. Yd. 66.8c.

"2.  74446 Sq. Yd. No. 2 Block (42 to Sq. Yd.) per Sq. Yd. 54.4c."

One of the pertinent recitals in said contract is that it.was entered into pursuant to an order of the county court duly entered of record, the date of the order not being recited. The contract bears date November 1, 1916; the bond sued on purports to have been signed and sealed November 28, 1916. It is proven that the only order of the county court authorizing the execution of said contract was entered November 2, 1916; but it appears from the record that the bond was not actually executed on behalf of the county court until some time after December 5, 1916, by Geo. C. Wells, President, who on that day became president of the county court. These dates are somewhat pertinent to points made by counsel in reference thereto.

The case seems to have been tried before the court and jury on issues joined on special pleas numbers 3, 4, 5, 6 and 7 filed by defendant, the court having on objection of plaintiff rejected special pleas numbers 1, 2, 8 and 9 tendered by the defendant to the ·declaration as amended. The result of the trial was a verdict and judgment for the plaintiff for the sum of $20,249.31, the exact amount of the penalty of the bond sued on.

In order of their precedence the first of the several points of error presented and relied on relates to the rejection of defendant's special pleas numbers 1 and 2. In the first of these pleas, after setting out in full the bond sued on, of which oyer was granted, it is alleged (a) that "there was not nor is there any negative or disjunctive covenant or agreement contained or specified in the said contract in the said condition of the said writing obligatory mentioned on the part or behalf of the said Mack Manufacturing Company to be omitted, done, observed, performed, fulfilled or kept, and that the said Mack Manufacturing Company hath well and truly performed, fulfilled and kept the said last mentioned contract, and all things therein contained, on its part and be-

half to be observed, performed, fulfilled and kept, according to the true intent and meaning thereof;'' (b) ''that the said plaintiff hath not at any time since the making of the said writing obligatory, and the condition thereto annexed, hitherto, been in any wise damnified by reason or by means of anything in the said writing obligatory contained:'' all of which, the plea continues, ''the said defendant is ready to verify.''

Plea number 2, directed specially to the second and third counts of the declaration, but omitting recital in full of the covenants and conditions of the bond sued on, avers, as does plea number 1; first, ''that there was not nor is there any negative or disjunctive covenant or agreement contained or specified in the said contract in the said condition of the said writing obligatory mentioned on the part of the said Mack Manufacturing Company, to be omitted, done, observed, performed, fulfilled or kept, and that the said Mack Manufacturing Company hath well and truly performed, fulfilled and kept the last said mentioned contract, and all things therein contained, on its part and behalf to be observed, performed, fulfilled and kept, according to the true intent and meaning thereof;'' second, as did also plea number 1, ''that the said plaintiff hath not at any time since the making of the said writing obligatory, and the condition thereto annexed, hitherto, been in any wise damnified by reason or by means of anything in the said condition of the said writing obligatory contained.''

The rulings of the circuit court rejecting these two pleas is defended by counsel for plaintiff on two several grounds; first, that in all action of covenant on bonds with collateral condition the only pleas available to defendant are payment, or covenants performed, and if the latter, with specification of the time, place and manner of performance, which the special pleas rejected do not do; second, that where, as in the instant case, the bond requires some affirmative act, as in this case the furnishing of bricks, the plea of non damnificatus is improper. These general propositions, based on the authorities cited, are conceded. Burks' Pleading and Practice, (2nd ed.), sec. 68, p. 102; *Scraggs* v. *Hill*, 37 W. Va.

706; 5 Enc. Pl. & Pract. 380, 381, and note; 2 Rob. Pract. 116; 4 Minor's Inst., part 2, 1220.

But the defendant relies on a well recognized exception to this general rule, namely, that, (1) where the subject comprehends a great multiplicity of particulars, or (2) where the contract is for the performance of matters set forth in another instrument, which matters are neither in the negative nor in the disjunctive, as these pleas allege, the rule invoked by plaintiff is inapplicable, citing and relying on 4 Minor's Inst., part 2, 1203, 1204, 1221, and 1743, and *Norfolk & C. R. R. Co.* v. *Suffolk Lumber Co.*, 92 Va. 413, 73 S. E. 737. The authorities cited also recognize a third exception, namely, (3) that where upon a condition to indemnify the plaintiff, the plea is non damnificatus.

It is apparent that the subject of the contract does not comprehend a great multiplicity of particulars, for the only subject of the bond and contract was defendant's agreement to furnish bricks of a particular description at a stipulated price.  On the second proposition, the condition in the bond is for the performance of the matters set forth in another instrument, not containing matters either in the negative or disjunctive, and although oyer of the bond was demanded and read into plea number one, oyer was not demanded of the contract referred to therein.  While the pleas both aver that the contract stipulated no negative or disjunctive matters, the rule seems to be that the defendant must demand oyer of and set forth the whole substance of the collateral instrument in order that it may be made to appear that the instrument did not in fact contain such negative or disjunctive stipulation.  4 Minor's Inst., part 2, p. 1223.  If this is the rule, of course the pleas were deficient in the particular pointed out, and as to this matter defective.  In the first and third counts the only breach alleged is of the covenant to pay the plaintiff the penal sum stipulated in the bond.  But in the second the failure and refusal of the Mack Manufacturing Company to furnish and deliver the brick as stipulated in the collateral agreement is alleged and relied on, and in connection therewith that by reason of the breach of the contract the plaintiff has had to go into the market and buy brick to take the place of those provided for in the contract,

and to expend a large sum of money in excess of that which it would have been required to pay the Mack Manufacturing Company therefor, and far in excess of the sum stipulated in the bond, wherefore it had thereby sustained damages in the amount so stipulated in the bond. But we do not find it specifically alleged in either count that the defendant or the Mack Manufacturing Company has breached the covenant in the bond "to save the county court harmless from any and all damages that might accrue to any person, persons or property by reason of the carrying on of said work or any part thereof, or by reason of the negligence of the said Mack Manufacturing Company, or any person or persons under its employ and engaged in said work." However, this covenant would not seem to cover the neglect of the principal in the bond to perform the specific acts of furnishing the brick contracted for. If the bond did not contain the covenant to indemnify, of course a plea of non damnificatus would not be necessary or proper. Burks' Pleading and Practice, (2nd ed.) 102. Each of the two pleas rejected, in addition to the other averments contained the words amounting to a general plea of non damnificatus, and if that covenant had been pleaded, the general plea to the issue thus presented would have been proper. Burks' Pleading and Practice, 2nd ed.), p. 101, §68; 4 Minor, part 2, 1203. Of course if a defendant should plead that he has saved harmless the plaintiff, the plea would be bad, unless the pleader should set forth specifically how he had saved harmless. 4 Minor, part 2, 1221. Wherefore, unless counts numbers one and three, counting only on the alleged breach of the covenant to pay the bond, presents an issue on the covenant to indemnify, which manifestly they do not, no issue was tendered by plaintiff calling for a plea of non damnificatus, and the trial court committed no error in rejecting the pleas.

The admission in evidence of the county court's order of November 2, 1916, is assigned as error, on two grounds; first, that it constituted a self-serving ex parte effort to change the terms of the brick contract; second, that in the entry of this order, the court was not acting as a court whose records are admissible in evidence against third parties. The fact, shown by the record, is that the order was entered, not on

November 1, 1916, but on November 2nd. The real objection
of counsel was not to the record itself, but to the evidence of
the clerk in connection therewith, that it was an order. It
was insisted by counsel for defendant that the record should
speak for itself, whether it was an order or not. Whatever
it may be, it appears to have been entered on November 2,
1916. We do not see that it is material whether it was a
court order having the force of an adjudication, or simply
the record of the county court of its acceptance of a propo-
sition by the Mack Manufacturing Company. In either
phase of the proposition the court could only act or be bound
by its records. The order is as follows: ''In the matter of
the contract made on the first day of November, 1916, by and
between the Mack Manufacturing Company, party of the
first part, and the county court of Brooke County, party of
the second part, it is unanimously decided that the County
Court should purchase the paving block from the Mack Manu-
facturing Company for the Steubenville and Hollidays Cove
and the Bethany Pike at a cost of $12.95 per 1000 f. o. b.
the nearest railroad siding, quantities and deliveries to be
in accordance with specifications on file in the County Engi-
neer's Office. For a more particular description of said con-
tract and specifications reference is hereby made to contract
and specifications on file in the office of the County Clerk.''

In presenting this point of error counsel cite and rely on
*Despard* v. *County Court of Pleasants County*, 23 W. Va.
318, and *C. & O. Ry. Co.* v. *Deepwater Ry Co.*, 57 W. Va.
641. In the first case the county court, after making a con-
tract in writing for certain repairs to the public building
and accepting such repairs, and had directed said agreement
to be entered on the order book of the court, thereafter but
before the minutes of the court had been signed, made a
material alteration of the agreement in the order book with-
out the knowledge of the plaintiff. Of course such action
by the county court, as was held in that case, was illegal, and
the alteration in the contract a nullity. In the other case,
the question involved the admissibility in evidence of certain
records of the contending railroad companies. It was de-
cided that: ''After proof in such case by competent evidence,
that certain corporate acts were performed and written

memorial thereof made in the form of resolutions or otherwise, the books and records of the corporation are admissible to identify and prove the character and terms of such instruments,'' and not evidence against strangers to the transaction. We do not see that those cases support the proposition of defendant's counsel in this case. In the first place, at the time the order in question was made, the contract, though dated November 1, 1916, had not been signed, nor the proposition of the Mack Manufacturing Company referred to therein acted upon: in fact the contract was not executed on the part of the county court until about December 5, 1916, and of course did not become a completed transaction until signed and delivered. The point presented for decision is important, mainly, because of the position of counsel, to be hereafter dealt with, on the question of the true measure of damages for the alleged breach of the contract by the Mack Manufacturing Company. Looking to the contract itself, introduced in evidence, we find that it refers to the proposition of the Mack Manufacturing Company in writing made pursuant to the advertisement for bids, and recites under a ''whereas'', that the contract for brick was by an order of the county court, entered of record, awarded to the said second party, it being the lowest responsible bidder therefor, for the amount specified in said proposal, which was thereto attached and made a part of the contract. This proposition was to furnish brick block f. o. b. cars, at an available railroad siding nearest the location where said brick blocks were to be used, as heretofore recited.

Manifestly this proposal was to furnish one or the other or both of the qualities of brick block specified, the amount specified being the estimate of the engineer, of the quantity required for the proposed work. The proposal of the manufacturing company was to furnish either class of material, at the prices stipulated, not both or none. The only order of the county court evidencing action on this proposal is that of November 2, 1916, introduced in evidence. It is not pretended that there was any alteration of the order, or of the contract after it was entered into. As the county court could only contract with authority given by order spread upon its records,

and the order introduced was the only order of the county court on the subject, and it antedated the date of the execution of the contract, it is to be presumed that the Mack Manufacturing Company, and the defendant as surety on its bond, knew of the nature and purport of the order, thus referred to authorizing the contract. And, as the order discloses, the county court thereby accepted the proposal of the Mack Manufacturing Company to furnish 74,446 Sq. Yd. No. 2 Block (42 to the Sq. Yd.) at 54.4 cents per square yard, or what is the same thing, the block which that company proposed to furnish at $12.95 per thousand f. o. b. cars as stipulated. There is no acceptance of the proposal to furnish No. 1 Block, at the higher price. The rule applicable to private corporations respecting the evidential character of their records does not apply to public corporations required by law to keep a record of their public or official proceedings. In the case of such public corporations they may use their records as evidence in suits to which they are parties, when properly authenticated. *Grafton* v. *Reed,* 34 W. Va. 172, 12 S. E. 676; 2 Dillon on Mun. Corp. (5th ed.) sec. 561.

The third point of error urged relates to the action of the trial court in admitting in evidence a letter of January 18, 1917, from the county court to the manufacturing company, ordering the delivery of brick. The substance of this letter was to inform the manufacturing company that the contractor performing the work of constructing the roads in question had ordered it to send brick to Brooke County at the rate of one car load a day, in compliance with the terms of its contract, and that the contractor had advised it that the manufacturing company had failed to comply with said order, and requesting the company to begin at once and continue to furnish the brick in accordance with its contract. The objection to the letter is that it was not an order from the contractor himself, as provided by the contract. Whatever virtue there may be in the objection to the letter it was followed by an order from the contractor, on March 15, 1917, supplemented by another letter from the county court, referring to it and demanding of the manufacturing company compliance therewith. The error, therefore, if error, was harmless and unimportant.

A fourth point of error relates to the admission in evidence, at the instance of the plaintiff, of an order of the county court, of July 14, 1917, as follows: "It is hereby directed that a warrant be drawn for the brick which have been purchased from the Mack Manufacturing Company during the month of April, May and June at the price of $15.90 per thousand. The above brick was bought outside of the contract." In support of this proposition the same cases cited and relied on in support of point number two, relating to the order of November 2, 1916, are relied on. Of course that order would not bind the manufacturing company. If in fact the brick referred to therein were covered by its contract of November 1, 1916, the county court having ordered them and the manufacturing company having delivered them pursuant to that contract, the county court could not by this subsequent order add to or take from the contract or any rights of the manufacturing company thereunder. However, the record shows that while the admission of the order was objected to, no exception was then taken to the ruling of the court; and besides, at the request of defendant's counsel the order was submitted to the jury for their inspection. Moreover, if as we have interpreted the original contract, it covered only the No. 2 block, the admission of this order and the subsequent voucher introduced in evidence in connection therewith, showing notice to the defendant of the county court's interpretation of the contract, and also the correspondence between the Mack Manufacturing Company and the county court looking to a new and independent contract for No. 1 block, at $15.90 per thousand, the same not to interfere with the rights of the parties under the original, could not have prejudiced the defendant. The record shows that this proposition was declined by the manufacturing company, on the ground that the terms were impossible. The proof is, however, that the county court was furnished some 767,350 No. 1 block, which were paid for at the rate of $15.90 per thousand, the county court always noting on its records and vouchers that the No. 1 block was furnished outside the contract.

What we have just said respecting point number four suf-

ficiently covers point of error number five, and that it also is without merit.

As a sixth point of error relied on it is insisted that the trial court should have acted favorably on the defendant's offer to prove, not by the record, but as a fact *de hors* the record, that an order had been directed, but omitted from the record, authorizing Geo. C. Wells, president of the county court, to write the letter of April 24, 1918, addressed to Wilt, Van Duser & Frazier, contractors, as follows:

> "Gentlemen:
> You are hereby advised that your proposition of April 1st for placing slag on Route No. 1, Sect. 2, between Stations 15—00 and 124—00 more or less, is accepted by this Court as an alteration, as permitted by Sect. 192 A. of Contract dated Nov. 1st, 1916.
> Kindly arrange for immediate execution of supplementary agreement which we now have prepared.
> Yours very truly,
> Geo. C. Wells, President,
> COUNTY COURT OF BROOKE COUNTY."

This letter was, when offered, admitted in evidence, but later all evidence relating to such an order was stricken out, and with it in effect the letter itself perhaps. When the ruling was made defendant's counsel then proposed to prove that notwithstanding no order authorizing the letter could be found, such letter was in fact authorized by the county court by an order which was not spread on the minutes. Defendant proposed to do this, not only by Mr. Wells, president, who wrote the letter, but also by Mr. Kirk, who swears that he had been president of the county court since January 1, 1917. The manifest object of the defendant in trying to get this evidence before the jury was to show in connection with the contract between the county court and Wilt, Van Duser and Frazier, as provided for therein, and in the contract with the Mack Manufacturing Company, that the county court had voluntarily, in the exercise of its rights under both contracts, elected to change the surfacing of the particular section of the road referred to in the letter, from brick block to slag, thereby excusing performance of the contract of the Mack Manufacturing company to furnish brick for that

particular section of the road, and denying plaintiff damages for such alleged breach by defendant. Defendant relies, not only on this letter of Wells and the evidence of Wells and Kirk, to show the fact of the change in the contract of the county court with these contractors, but also upon the fact shown by an order of the county court actually entered of record and introduced in evidence, of December 18, 1918, as follows:

> "In the matter of acceptance of the road from Steubenville Bridge to Hollidays Cove, under contract with Wilt, Van Duser and Frazier, the road having been completed, the engineer is directed to prepare final estimates under this contract, and final acceptance is postponed until the estimates and final payment is made."

The defendant's position respecting these facts is that when the county court elected to make the change from brick block to slag, it was done in the exercise of its right, not only under section 192-A of its contract with the contractor, but also under a provision of its contract with the Mack Manufacturing Company. By section 192-A of the contract with the contractor, it is provided, among other things, as follows: "The county court, however, shall have the right to make such additions, deductions, or changes in the work done as it may deem necessary, making a fair allowance or deduction on account thereof, at the unit prices named in the proposal, and this contract shall in no particular be invalidated thereby." The correlative provision of plaintiff's contract with the Mack Manufacturing Company is in exactly the same language, except the added provision that, "the party of the second part agrees that it will not make any claim for loss of anticipated profits because of any such change, or by reason of any variation between the quantities of the approximate estimate and the quantities of the work to be done."

Three grounds are relied on to justify the rulings of the circuit court on all this evidence: First, that there is no pleading justifying its admission, that as the matter of the evidence, if of any evidential force, would be admissible only under a plea of confession and avoidance, and that no such

plea was interposed; Second, that plaintiff did not voluntarily elect to substitute slag for brick block, but on the contrary was forced to do so by the default of the Mack Manufacturing Company to furnish brick block, and then only as a temporary expedient to provide a road for the people of the particular section to be accommodated thereby; Third, that the plaintiff's election to avail itself of the particular provisions of section 192-A of its contract with the contractor, to avoid any liability to them, would not justify the breach of its contract by the Mack Manufacturing Company, and that unless the election was voluntary, and the intention was to also relieve the manufacturing company of the obligation of its contract, a question of fact perhaps for the jury, the evidence was incompetent on any issue presented in the case.

On the first proposition the authorities do hold that the plea of covenants performed can be supported only by evidence of such performance, and that to admit evidence of confession and avoidance there must be a special plea presenting that issue. *Scraggs* v. *Hill*, 37 W. Va. 706, 715, citing Barton's Law Practice, sec. 10, p. 143; *Norris* v. *Wolfe*, 2 Speers' Rep. (S. C. L.) 322; *Krog* v. *Rice*, 1 Speers' Rep. (S. C. L.) 333; 15 C. J. 1196-1198, and note; *Star Brick Co.* v. *Ridsdale et al.*, 34 N. J. L. 428.

On the second proposition there was much evidence tending to show default on the part of the Mack Manufacturing Company to deliver brick on the order of the contractor as provided in the contract. No evidence was introduced showing or tending to show that it had at any time undertaken to excuse performance by the act of the plaintiff in changing from one class of material to another, thereby to relieve the brick company, as specified in the contract. Of course, if there was such an election by the county court, when the brick company stood ready and willing to furnish the brick, it could not on principal recover against the brick company or its surety anything by way of damages for a breach of the contract. Such an election under the contract would be in accordance with its terms, denying damages to either party.

Respecting the third and last of the defenses proposed, it is perhaps proper to say that the evidence tended very strongly to show that the election of the plaintiff to use

slag in place of brick block for the particular section of the road covered, was after repeated demands for the brick, and as a mere temporary expedient. Of course, there was the letter of the president of the county court to the contractor, which, if admissible, and there had been any plea under which it was admissible, to show that the county court had elected, as provided in section 192-A of the contract, but very little else now appears in the record to support the defendant's theory of that election. And as suggested, if the election was in good faith and not as a basis for some unlawful demand against the defendant, it could in no way relieve the Mack Manufacturing Company or the defendant of its covenant in the bond. But our decision now is that without a special plea none of the evidence on this question was admissible.

What we have said on the sixth point of error is applicable also to the seventh point, and we dismiss that proposition without further comment.

The remaining points of error, the eighth relating to plaintiff's instruction number one as to the true measure of damages, and the ninth that the verdict was excessive, involve substantially the same questions. Instruction number one given at the instance of plaintiff, and the only instruction given, told the jury in substance and effect, that if they found for the plaintiff, the measure of damages for the breach by the Mack Manufacturing Company of the contract of November 1, 1916, was the difference between the contract price of the brick and the market value thereof at the time and place stipulated for delivery thereof, together with any special damages suffered by reason of the wrongful conduct of the seller, if the jury found from the evidence that it had so violated the contract on its part. The vice of this instruction is not that it is not good abstract law, but that there was no evidence introduced to which it could properly be applied. On this question one of the arguments advanced by defendant is that the evidence shows that from the summer of 1917 to December of that year, the plaintiff got from the Mack Manufacturing Company Class A brick, amounting in all to 767,350, at the contract price of $15.90 per thousand, which it put upon the roads to which the contract related,

and therefore that it could not possibly have sustained any damages on account of the failure of the brick company to furnish the lower grade of brick at $12.95 per thousand; and that the county court did not have the right to treat its purchases of the higher class of brick as being without the contract; and that the delivery of the higher grade of brick at $15.90 per thousand, without an agreement to the contrary, constituted a fulfillment of the brick company's contract to furnish the lower grade of brick. We do not find in the record any evidence of the change in the contract: on the contrary there is some evidence that the brick company refused to make such modification of the contract.

Another argument interposed by defendant's counsel, which we think sound, is that if the county court purchased from the Mack Manufacturing Company, or anyone else, Class A brick or No. 1 block at $15.90 per thousand as a substitute for Class B block contracted for, it could not recover in damages, if anything, a greater sum than the difference between the contract price of the grade of brick contracted for and the price paid for a better class or A grade, which was $2.95 per thousand. Moreover, we do not find in the record any evidence that while the county court was purchasing from the Mack Manufacturing Company and others brick called for in the proposal of the brick company as Class B brick, it could not have purchased in the market the class of brick the brick company contracted to supply it, except the evidence that the brick company failed to supply that class of brick. If that class of brick could have been secured in the market,. was it not the duty of the county court to have purchased that class of brick in order to have minimized the amount of damages recoverable against the brick company? And if it could not for the time being do so, and it elected as it might under the terms of the contract, to substitute a higher grade of brick for that contracted for, by making proper additions to or deductions from the contract, should it not make proper allowance therefor? In equity at least, we think it would be bound to do so. And in view of the terms of the contract, and without some showing justifying a different conclusion, we think it should not recover anything for the difference between the contract price of the

class of brick contracted for and the price paid for the 767,-350 of the Class A brick purchased to be used in their place. In the purchase of the better grade of brick the county court presumably got a better value, which it should pay for. This argument is peculiarly forcible, we think, in this case where the prices for the two grades of brick were stipulated in the original proposal of the brick company, and the county court, whether under the contract or outside of it, procured the higher grade of material.

The only evidence relied on by the plaintiff in proof of the difference between the contract price and the market value of the brick contracted for at the time and place of delivery, is that of Mr. Fred G. Porter, a brick manufacturer. His evidence seems to be confined to the period between the spring of the year 1918 and the time when slag was substituted for brick in the completion of the roads, his estimate being particularly limited to May 1, 1918, and the price of No. 1, or A, and B block, 42 to the square yard. His evidence was that the market price of this class of brick at that time was about $26.00 per thousand f. o. b. cars at the plant. The evidence shows that at about the same time, namely, April 1918, the plaintiff actually purchased Class A brick at $24.50 per thousand. But as to the period from August 1917 to December of that year, there is no evidence of the market value, either of Class B brick contracted for, or of Class A brick purchased and used on the roads, except the evidence of the witness Porter, who, when counsel for plaintiff read to him from the original specifications of the engineer, said that those specifications called for "Number 1 block, and the market price in 1918, in the spring, would be $26.00." On this evidence it is argued on behalf of plaintiff, that if the brick company could get more for its Class A brick, and both classes answered the specifications, the one was as acceptable to plaintiff as the other; and that it was immaterial to plaintiff which was furnished. We think the proper answer to this proposition is that if the brick company, though having the specifications before it, proposed in writing to furnish one or both classes at the stipulated prices, and the county court elected to accept the offer for Class B brick only, at the lesser price, notwithstanding both may have answered the

specifications, it recognized the difference between the two classes, and in accepting one and not both, it could not be heard to say that it was entitled to the other also in fulfillment of its contract, certainly not at the price of the other class of brick. It was bound by the contract made, as well as the brick company, and for any breach of the contract would be limited in its recovery to the difference between the contract price and the market price of the brick contracted for, not the price of some other class of brick; and in this case the burden was upon plaintiff to show the facts upon which its rights necessarily depended. So that, there was not sufficient evidence before the court and jury upon which the jury could safely arrive at a proper verdict.

There is an exception, however, to the general rule, namely, that when the goods purchased are not obtainable in the market, the purchaser may, in a reasonable and prudent way, purchase or procure the nearest substitute therefor and recover from the seller the difference between the contract price and the purchase price of the substituted goods. There is no evidence in this case, however, that the class or quality of brick purchased could not have been obtained, and therefore nothing in the record to justify as yet the application of this exception to the general rule. 2 Sutherland on Damages, (4th ed.), sec. 652.

On the other question, the excessiveness of the verdict, it remains to be said that it was for the full penalty of the bond, namely, $20,249.31. If, as we have concluded, there was not sufficient evidence in the record to show right of recovery on the basis of 767,350 Class A brick furnished by the brick company, the jury were not warranted in including in their verdict anything therefor. And respecting the 833,500 bricks purchased from the American Sewer Pipe Company, which we think the evidence shows were of Class A, and not Class B brick, without any evidence of the market price of Class B brick at the time, or evidence that Class B brick could not be obtained on the market, the jury could not properly predicate any verdict thereon.

Wherefore, our conclusion is to reverse the judgment, set aside the verdict and award defendant a new trial.

*Reversed and new trial awarded.*