UNITED STATES COAL AND COKE COMPANY *v.* MAX TURK *et al., d. b. a.* AMERICAN LOAN COMPANY, and EDDIE BAKER

(No. 9596)

Submitted September 26, 1944. Decided December 12, 1944.

*Arthur S. Dayton* and *J. Newton Harman, III,* for appellant.

*Jerome Katz,* for appellees.

Rose, President:

This is a proceeding under what is called the Declaratory Judgment Act of this state, being chapter 26 of the Acts of the Legislature of 1941, which appears as article 13, chapter 55, of Michie's West Virginia Code of 1943. The plaintiff in the proceeding is the United States Coal and Coke Company and the defendants are Max Turk and others, "doing business as American Loan Company", and Eddie Baker. The United States Coal and Coke Company, on and before the 9th day of March, 1940, was, and thenceforward to this time has been, engaged in the business of operating a coal mine in McDowell County. On that date the defendant, Eddie Baker, was an employee of the plaintiff and continued as such to the time of the institution of this suit.

On March 9, 1940, Baker executed to the defendant, American Loan Company, an assignment of his wages in the amount of $225.00 to secure the Loan Company in the repayment to it of the sum of $225.00, with monthly interest on $150.00 of that amount at 3½ per cent and on the residue thereof at 2½ per cent until paid. On or about the 18th day of January, 1943, the Loan Company caused a copy of said assignment, together with a notice and affidavit, showing the amount due and unpaid thereon, to be regularly served upon the plaintiff. It is conceded that this assignment, notice and affidavit are in strict con-

formity with the requirements of what is known as the Small Loan Act embodied in chapter 13 of the Acts of the Legislature of 1933, Regular Session, now found in Michie's West Virginia Code of 1943 as article 7a of chapter 47 thereof. The plaintiff, however, alleges that this assignment is invalid by reason of its failure to conform to certain provisions of chapter 131 of the Acts of the Legislature of 1937 relating in general to assignment of future wages. The appellee, American Loan Company, takes the position that the last mentioned act was not intended to, and does not, apply to assignments made under the provisions of the Small Loan Act. This issue is the sole controversy presented on this appeal. The defendant, Eddie Baker, made no appearance below nor in this Court.

A brief history of the statutory enactments of our Legislature relating to the assignment of wages becomes necessary. We are cited to no statute of this state relating to the assignment of wages prior to the enactment of chapter 63 of the Acts of the Legislature of 1887. That act was entitled "AN ACT to secure to operatives and laborers engaged in and about mines, manufactories of iron and steel, and all other manufactories, the payment of their wages at regular intervals, and in lawful money of the United States." The only portions of that act pertinent are found in sections 1 and 2 thereof and are as follows:

"That all persons, firms, corporations, or associations in this State, engaged in mining coal, ore or other minerals, or mining and manufacturing them, or either of them, or manufacturing iron or steel, or both, or any other kind of manufacturing, shall pay their employees as provided in this act.

All persons, firms, companies, corporations, or associations, engaged in the business aforesaid, shall settle with their employes at least once in every two weeks, unless otherwise provided by special agreement, and pay them the amount due them for their work or services in lawful money of the United States, or by the cash order as described and required in the next succeeding section of this act. *Provided,* That nothing herein contained shall affect the right of an employe to

assign the whole or any part of his claim against his employer."

The pertinent parts of this statute continued to and were embodied in the Code of 1931 as article 5, section 3 of chapter 21, in substantially the same language, where it remained unrepealed and unamended until the enactment of chapter 131 of the Acts of 1937. This amendatory act was entitled "AN ACT to amend and reenact section three, article five, chapter twenty-one of the code of West Virginia, one thousand nine hundred thirty-one, relating to assignment of wages." The amendment effected by this act was the adoption of the following paragraph:

"No assignment of or order for future wages shall be valid for a period exceeding one year from the date of such assignment or order. Such assignment or order shall be acknowledged by the party making the same before a notary public or other officer authorized to take acknowledgments, and such order or assignment shall specify thereon the total amount due and collectible by virtue of the same and three-fourths of the periodical earnings or wages of the assignor shall at all times be exempt from such assignment or order and no assignment or order shall be valid which does not so state upon its face: *And provided further,* That no such order or assignment shall be valid unless the written acceptance of the employer of the assignor to the making thereof, is endorsed thereon: *Provided further,* That nothing herein contained shall be construed as affecting the right of employer and employee to agree between themselves as to deductions to be made from the payroll of employees."

In 1925 the Legislature enacted chapter 91, entitled "AN ACT to license and regulate the business of making loans in sums of three hundred dollars or less, secured or unsecured, at a greater rate of interest than six per centum per annum, prescribing the rate of interest and charge therefor, and penalties for the violation thereof, and regulating the assignment of wages or salaries, earned or to

be earned, when given as security for any such loan, and for wage assignments given as the consideration for any sale." This act, in form and substance, constituted a specific statute governing persons and corporations engaged in the business of making loans of less than $300.00 and regulated the assignment of wages and salaries, earned or unearned, when given as security for such a loan. It consisted of nineteen sections, section sixteen thereof, relating to the assignment of wages, being as follows:

"No assignment of or order for the payment of any salary, wages, commissions or other compensation for services, earned or to be earned, given to secure any such loan shall be valid unless the amount of such loan is paid to the borrower simultaneously with its execution; nor shall any such assignment or order, or any chattel mortgage or other lien on household furniture then in the possession and use of the borrower be valid unless it be in writing signed in person by the borrower; nor, if the borrower is married, unless it be signed in person by both husband and wife; *provided,* that written assent of a spouse shall not be required when husband and wife have been living separate and apart for a period of at least five months prior to such assignment, order, mortgage or lien.

Under any such assignment or order for the payment of future salary, wages, commissions or other compensation for services, given as security for a loan made under this act, a sum equal to ten per centum of the borrower's salary, wages, commissions or other compensation for services shall be collectible from the employer of the borrower by the licensee at the time of each payment of salary, wages, commissions or other compensation for services from the time that a copy of such assignment verified by the oath of the licensee or his agent, together with a similarly verified statement of the amount unpaid upon such loan, is served upon the employer."

This act is recognized as having resulted from certain investigations and recommendations made by the Russell Sage Foundation, a similar statute being adopted in many

states about the same time. *Cash Service Company* v. *Ward,* 118 W. Va. 703, 192 S. E. 344.

By chapter 13 of the Acts of the Legislature, Regular Session, 1933, the Act of 1925 was amended by the elaboration of certain sections and the addition of others, making a complete act of twenty-seven sections. Section 16 of the Act of 1925 was embodied in the Act of 1933 almost verbatim and appears as section 17 thereof.

It is conceded by counsel, as indeed it must be, that the Act of 1937 does not purport to amend the Small Loan Act of 1933 directly. The plaintiff, however, insists that it does so by implication, while the appellee, American Loan Company, takes the position that since the Act of 1937 does not purport directly to amend or repeal any of the provisions of the Act of 1933, it cannot do so impliedly for the reason that the latter act is a special, specific or particular statute governing a limited part of a line of business recognized and authorized by law, and is therefore immune from amendment by implication. Counsel are further in agreement that the only questions here involved are whether the provision of the Act of 1937 to the effect that assignments of wages are limited to one year, and the requirement of that act that the employer must accept the assignment, are applicable to the assignment here involved. The court below decreed that these provisions do not apply to assignments of wages, made in conformity with the requirements of the Act of 1933, as security for loans made by licensees under that act.

By chapter 91 of the Acts of 1925 the Legislature plainly recognized the making of small loans upon the security of wages and chattel mortgages as a distinct and separate business in itself, requiring separate laws for its regulation. This was in accordance with a policy generally adopted throughout the United States in that period. The act adopted required all engaged in such business to obtain a license and pay an annual fee therefor; to give bond for compliance with the terms of the act, and to submit to supervision by the Commissioner of Banking. In return for these burdens the licensee was permitted

*inter alia* to charge interest which would otherwise have been usurious and to take as security partial assignment of wages which otherwise would have been invalid. The assignment of wages for this purpose was thus deliberately and clearly set apart as exempted from, or as an exception to, various general laws which otherwise would have been applicable to such assignments. The amendatory act of 1933 repeated and confirmed this policy. The small loan business came to be governed by a statutory regulation separate in application from those governing other similar transactions, and, necessarily, by the same process, was freed from the general law controlling such other similar businesses.

Such a statute is, in no sense, a "special act" as that term is used in section 39, article 6 of the constitution of this state; yet in ordinary language, and even in legal writing, the word "special", for want of an adequate synonym, is sometimes applied to legislation which is, in fact, specific, particular, or of limited application. But such statutes, applying as they do to all persons engaging in a certain business, and all who can and do come within the class, are not "special acts" in the narrow and exact sense of that term. Our Code contains many such statutes. Examples are the act authorizing the organization and operation of farmers mutual fire associations and making them exempt from the general laws relating to insurance, Code, 33-5; and the bulk sales law, establishing particular regulations to control the sales of stocks of merchandise other than in the regular course of business. Code, 40-2.

Statutes of this character, often loosely called "special", generally come within the proper application of the rule of construction to the effect that "special acts" are not impliedly affected by subsequent general acts in the absence of a clearly manifested intention on the part of the Legislature that they should so operate. Implied repeals are not favored in any case; and courts refrain from speculating upon, or hazarding a guess as to, the intention of a legislative body which has elected not to express such

intent, or neglected to make it apparent. Many cases, state and federal, announce this principle.

Congress, by an act adopted in 1899, abolished the rank of commodore in the United States Navy and provided that those then holding that rank should become rear admirals of a stated grade, for which a specific rate of pay was fixed. A subsequent act established rates of pay for all navy officers in general, including rear admirals. The question arose whether the former commodores should take the newly established pay of rear admirals generally or that specifically provided in the Act of 1899. The Court held in *Rodgers* v. *United States,* 185 U. S. 83, 22 S. Ct. 582, 46 L. Ed. 816, that the particular provisions as to pay contained in the Act of 1899, relating, as it did, to a specific class of rear admirals, survived the general statute subsequently enacted. In *Washington* v. *Miller,* 235 U. S. 422, 35 S. Ct. 119, 59 L. Ed. 295, the question arose whether, in Oklahoma, an act specifically fixing descent among the Creek Nation of Indians, or a later act establishing the law of descent generally, should prevail. It was held that the latter general statute did not, by implication, repeal, amend or otherwise affect the earlier specific one applying to Creeks only. By section 5219 of the Revised Statutes of the United States all the shares of a national banking institution are made taxable at the will of the legislature of the state in which the association's principal place of business is situate. By subsequent acts of Congress the Reconstruction Finance Corporation was created and regulated, with power to own and hold preferred stock in national banking associations. In *Baltimore National Bank* v. *State Tax Commissioner of Maryland,* 297 U. S. 209, 56 S. Ct. 417, 80 L. Ed. 586, the question was whether the later acts made stock in national banking associations, held by the Reconstruction Finance Corporation, nontaxable. The Supreme Court of the United States held that the earlier specific act giving state legislatures power to tax such stocks was not affected by the later general statutory provisions for exemption from taxation of the assets of the Reconstruction Finance Corporation.

State courts are in agreement with the principle recognized in these cases. A few of many illustrative cases are: *Renner* v. *State,* 182 Ind. 394, 106 N. E. 703; *Kuchler* v. *Weaver,* 23 Okla. 420, 100 P. 915; *O'Malley* v. *Prudential Casualty & Surety Co.,* 230 Mo. App. 935; 80 S. W. (2d) 896; *Commonwealth* v. *Lomas,* 302 Pa. 97, 153 A. 124; *City of Mobile* v. *Mobile Electric Co.,* 203 Ala. 574, 84 So. 816; *McNeil* v. *Kingsbury,* 190 Cal. 406, 213 P. 50; *Ward* v. *Smith,* 166 Wis. 342, 165 N. W. 299.

None of these cases involves a "special act", such as is inhibited in our Constitution; yet the Courts recognized and considered themselves controlled by the principle of construction that specific and particular statutes do not yield to later broad and general statutory enactments which do not directly purport to modify the former specific acts. Of more significance is our own case of *Hinkle* v. *North River Ins. Company,* 70 W. Va. 681, 75 S. E. 54. By chapter 33 of the Acts of 1899 it was enacted that "All fire insurance companies doing business in this state shall be liable, in case of total loss by fire or otherwise, as stated in the policy on any real estate insured, for the whole amount of insurance stated in the policy of insurance upon said real estate." Chapter 77 of the Acts of 1907 provided that no fire insurance company should issue policies on property in this state other than those in the form used by companies organized and doing business under the laws of the State of New York. One of the provisions of the New York policies, and of the policy actually involved in the case, was that "This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs." The question was whether the Act of 1899 or that of 1907 should control. This Court held that the earlier act was not affected by the later one, and the decision was directly based upon the immunity of specific and particular acts against later broad or general acts not purporting directly to repeal or amend the former. The same question arose in *Niagara Fire Insurance Company of N. Y.* v. *Raleigh Hardware Company,* 62 F. (2d) 705, C. C. A. 4th Cir. That Court followed the

decision in the case of *Hinkle* v. *North River Ins. Company,* *supra,* but added, through Parker, Judge: "And, even if the question were an open one, we do not think that under the authorities which we have cited we would be justified in holding that there had been a repeal by implication of the valued policy statute." In the later case in this Court of *Null* v. *The Stuyvesant Insurance Company,* 114 W. Va. 179, 171 S. E. 416, the *Hinkle* case was approved and followed. In *County Court of Brooke County* v. *United States Fidelity & Guaranty Co.,* 87 W. Va. 504; 105 S. E. 787, *Id.* 95 W. Va. 439, 121 S. E. 422, an issue was whether a provision of section 34 of chapter 50, of the Code of 1918, relating to service on corporations of process issued by justices, originally enacted as part of chapter 8 of the Acts of 1881, or those of section 7 of chapter 124 of that Code, originally part of chapter 117, of the Acts of 1882, relating generally to service of process on corporations, should prevail. This Court, speaking by Judge Lynch, said: "Section 7, ch. 124, however, is a general, not a special, provision, and hence does not render inapplicable the provisions of chapter 50." The later general statute was held not to affect the earlier special, specific or particular one, directly applicable to the case.

The above cases determine the issues raised in the present case. This Court will not make an application of the Act of 1937 which the Legislature did not make. Rather, we presume that the Legislature enacted chapter 131 of the Acts of 1937 with full knowledge of the foregoing principles of construction, and with the intention that the act was to be subject thereto. If any intent as to the application of that act is indicated by its content, it would be to the effect that the Small Loan Act was not to be touched, for the express provision of the act is that it is to amend the wholly different provision of the statute. If the intention was to affect the Small Loan Act, such purpose could have been clearly indicated, whereas the Legislature directed the attention of the public away from this act and specifically purported to amend, not this specific and particular law, but the general law. Our conclusion simply

leaves unmodified the classification heretofore established in comprehensive, careful and deliberate enactments by which assignments of wages were divided into two classes; those made under the Small Loan Act, on the one hand, and all other such assignments, on the other, the one class being controlled by the Acts of 1925 and 1933 and the other by general law, including the Act of 1937. In other words, the general law, as amended by the Act of 1937, is in full effect as to all assignment of wages other than those excepted out of general law by the Acts of 1925 and 1933. The latter remain an exception to general law, precisely as they were before the enactment of chapter 131 of the Acts of 1937.

We, therefore, perceive no error in the judgment of the circuit court, and the same is accordingly affirmed.

*Affirmed.*

KENNA, JUDGE, dissenting:

I cannot assent to the views announced by the majority of the Court for the following reasons:

The statute commonly known as the "Small Loan Act" in my opinion, is a general act of our Legislature. Otherwise this Court would be obliged to hold it invalid, because Section 39 of Article 6 of our Constitution expressly provides that the Legislature shall not pass special laws regulating the rate of interest, and goes further and states in a correlative provision that the lawmaking body shall enact general laws relating to the same subjects, including the regulation of the interest rate, concerning which special laws are prohibited. If valid, the "Small Loan Act" is one of these general laws.

It was after our statutes provided that interest charges of more than six per cent per annum should be unlawful that the "Small Loan Act" was passed, by the terms of which those licensed by the State to do so might charge on loans not exceeding three hundred dollars, three and one-half per cent per month on the first one hundred and fifty dollars, and two and one-half per cent per month on

the balance. Plainly, this act regulating the rate of interest was to be read in *pari materia* with the act or acts prohibiting in other private business like charges above six per cent per annum, and, in compliance with the constitutional provision, was a general act. I believe that, with proper regard for Section 39 of Article 6 of our Constitution, to twice subdivide Acts of the Legislature so that general acts will be distinguished first from special acts, and that distinction will be followed by splitting general acts into two classes to be known as those that are particular acts and those that are not, at least partly destroys the effect of Section 39 of Article 6, the purpose of which is to require the Legislature, each time it acts upon the subject named therein to consider that subject comprehensively and thoroughly so that their decisions will be reached only after a complete review of the matter under consideration to the end that no statutory provisions inconsistent with their present conclusion could remain in effect. In that way, otherwise inevitable confusion can be avoided and uniformity assured.

I have examined the cases cited in the opinion of the majority having to do with this question, and am of the opinion that they do not apply in this jurisdiction, because none of them is controlled by the same constitutional provision written into our Section 39 of Article 6. Of course the Federal cases sprang from basically different principles.

If the "Small Loan Act" is a general statute it necessarily follows that Chapter 131 of the Act of 1937, dealing with assignment of unearned wages, is to be read in *pari materia* with it to the extent that they can be made to conform, and that where they conflict the provisions of the Act of 1937 control. The result would be that all assignments of unearned wages covering a period of more than one year are invalid, and the holding of the Circuit Court of Mercer County should be reversed.

But if it should be admitted that the "Small Loan Act" is neither a special nor a general act, but is a particular act, the provisions of which are not altered by the terms of a

subsequent general statute in conflict therewith, *unless the intention of the Legislature to do so is clear,* I believe then that the Act of 1937 was beyond doubt passed with the "Small Loan Act" in contemplation and for the purpose of preventing the indeterminate mortgaging of their future by a class whose improvidence demonstrates their lack of foresight; not their lack of industry, for the shiftless have no steady wages.

To my mind it is utterly unthinkable that the Legislature of 1937 could have passed an act limiting the assignment of unearned wages to the period of one year, containing an express provision that: "This act shall not apply to small loan companies". Yet the majority opinion says, in effect, that is exactly what the Legislature did.

The Act of 1937 by its terms applies to "persons, firms and corporations doing business in this state". What persons, firms or corporations were clearly uppermost in the minds of the lawmakers as included in that terminology? The banks certainly were not, because they do not loan money on wage assignments, and do not maintain the detailed organization required to keep track of them. The banks the Legislature certainly did not have primarily in mind. Pawnbrokers, in effect, loan on chattels usually double the value of the money loaned. Plainly the 1937 Act was not aimed at them. The loans of building and loan associations are secured by land. Wage assignments are not of their stock in trade. Certainly they were not the primary object of the act. Few of our legislators could think of a West Virginia business as being interested in wage assignments other than small loan companies. In fact, not only do small loan companies handle a decidedly preponderating percentage of unearned wage assignments, but I cannot name another business in which they could be more than an occasional mere incident. If the Legislature did not clearly intend the Act of 1937 to apply to them, to whom did it intend it to apply? The opinion of the majority is silent as to that vitally pertinent question.

I believe that the "Small Loan Act", although regarded as a particular act, the terms of which are not controlled

by a subsequent general act of the Legislature *unless the legislative intention to do so is clear,* (see the cases cited in the majority opinion) is to be read as yielding to the Act of 1937 because the intention of the Legislature could not have been otherwise.

I therefore think that the nature of the "Small Loan Act" does not affect the result in this matter because, if a general act, which I believe it is, its terms are controlled by the Act of 1937: if a particular act the legislative purpose to restrict the assignment of unearned wages to small loan companies by the Act of 1937 is perfectly clear. I, for those reasons, disagree with the majority of the Court.