RULEY, JUDGE:
This case involves a claim for damages in the sum of $450,000.00 growing out of performance of a contract requiring the claimant to construct approximately 190,000 linear feet of fence along the right of way of Interstate Route 64 in Kanawha, Cabell, Putnam, and Wayne Counties. Several items of the claim were eliminated by the Order heretofore entered on September 1, 1976, sustaining the respondent’s motion to dismiss. Subsequently, the case was tried insofar as it related to the remaining items of the claim, viz.: (1) a claim for labor and material allegedly furnished incident to providing extra terminal posts; and (2) a claim for relief from liquidated damages asserted by the respondent.
To facilitate understanding of the claim relating to extra terminal posts, it must be understood that all fence posts may be classified as line posts (which require no bracing member) or as terminal posts (which require at least one bracing *10 member). Terminal posts may be sub-classified as end posts (which require one bracing member), pull posts (which require two bracing members), or corner posts (which require two bracing members). All terminal posts and their bracing members were required to be set in concrete and were larger and heavier than line posts, the purpose of the latter being only to support the fence between the terminal posts. The importance of the distinctions insofar as cost is concerned is apparent without further explanation.
The respondent’s plans and drawings, which were incorporated into the contract, showed 854 terminal posts. The claimant’s bid was based on a projected installation of 925 terminal posts, the increase representing an allowance for additional terminal posts at points where either the horizontal or vertical angle of the fence was 15° or more. In that connection, the preponderance of the evidence clearly established the trade practice or custom of not installing terminal posts at points where an angle in a fence is less than 15°. Based on the calculation of 925 terminal posts, the claimant’s successful unit price bid was $1.79 per linear foot of fence — one cent lower than the respondent’s estimate of $1.80. As the fence was constructed, the respondent required the claimant to install 1,927 terminal posts.
The contract specifications in the last two paragraphs of §2.131.3 (F), apparently intending to relate to line posts and terminal posts, respectively, provided:
“Posts shall be spaced in the line of fence as shown on the plans with tolerances of minus two ( — 2) feet. Spacing of post shall be as uniform as practicable under local conditions. Additional posts shall be set at each abrupt change in grade.
Pull posts, as defined in these specifications, shall be placed approximately three hundred thirty (330) feet apart in straight runs and at each vertical angle point, all as directed by the engineer. Corner posts shall be placed at each horizontal angle point.”
The patent inconsistency and ambiguity of these provisions (which literally would require both a line post and a pull post *11 at each vertical angle point) must be construed and resolved in the light of the proven trade practice and custom and common sense. Raleigh Lumber Co. v. Wilson & Son, 69 W.Va. 598, 72 S.E. 651 (1911); Bragg v. Lumber Co., 102 W.Va. 587, 135 S.E. 841 (1926). In addition, broad delegations of power must be exercised in a reasonable manner under the particular circumstances of each case, and not in an arbitrary or capricious manner. Tri-State Stone Corp. v. The State Road Commission of West Virginia, 9 W.Va. Ct. Cl. 90, at 106 (1972). The evidence demonstrates that the claimant was required to install 641 terminal posts at horizontal or vertical angle points of less than 15°, with the vast majority at angles of less than 10° and a very substantial number at angles under 5° — none of these were points where end posts or maximum spacing terminals were necessary. From a preponderance of the evidence, it appears that those 641 terminal posts were unnecessary (that is, that line posts would have served just as well), and that their requirement was arbitrary. The undisputed evidence is that the additional cost to the claimant, above the cost of a line post, of each terminal post was $131.33. Accordingly, it appears that the claimant should be awarded the sum of $84,182.53 for extra terminal posts.
Turning to the matter of liquidated damages, it appears that the respondent assessed and imposed (withholding the sum from the claimant’s final payment) $25,900.00 in liquidated damages calculated pursuant to the contractual formula at the rate of $100.00 per day for 259 days of alleged delay in performance of the contract. It is undisputed that the claimant failed to complete its work under the contract until 286 days after the contract completion date. The respondent granted an extension time of 27 days, leaving 259. days for which liquidated damages were assessed. Evidence respecting several reasons for the delay was offered by the claimant as bearing upon the issue of whether the delay should be excused, but the Court does not need to consider that issue because of the general rule enunciated in 22 Am. Jur. 2d “Damages”, §233, p. 319, as follows:
“The plaintiff cannot recover liquidated damages for a breach for which he is himself responsible or to which he *12 has contributed, and as a rule there can be no apportionment of liquidated damages where both parties are at fault. Hence, if the parties are mutually responsible for the delays, because of which the date fixed by the contract for completion is passed, the obligation under which another date can be substituted, cannot be revived.” (emphasis supplied)
It could not be contended that the installation of 641 extra terminal posts did not contribute to cause the delay. In addition, there is no evidence as to the amount of actual damage, if any, sustained by the respondent as a result of the delay in constructing the right of way fence. For that reason, this case would seem to fall within the purview of the rule enunciated in J. I. Hass Co., Inc. v. State Road Commission, 7 W.Va. Ct. Cl. 209, at 212 (1969). Accordingly, the assessment by the respondent of liquidated damages must be rejected and the claimant awarded the additional sum of $25,900.00.
Award of $110,082.53.