RULEY, JUDGE:
The claimant and respondent entered into a contract in September *5 1973 for the installation of traffic signals in Clarksburg. There were two projects in the contract designated as T-4009(l) and F-282(76). The respondent gave the claimant notice to proceed in October 1973, at which time claimant negotiated with suppliers for the various materials needed for the projects. Construction of the projects began on July 23, 1974, with a scheduled completion date of December 30, 1974. Completion of construction occurred in June 1975. Claimant contends that problems which occurred during construction caused claimant to incur additional costs in the amount of $75,841.00; that delays attributable to the respondent resulted in extra costs of $17,646.00; that non-productive labor costs of $71,000.00 resulted from those delays; and, that respondent wrongfully assessed liquidated damages against the claimant in the amount of $24,450.00. The total sum claimed is $188,937.00.
When the respondent gave the notice to proceed, the claimant issued purchase orders to suppliers for materials needed to begin construction. Those materials included poles, mast arms for signal heads, anchor bolts and controller boxes. Construction began when claimant received the anchor bolts needed for installing the foundations. In the initial construction, claimant experienced some problems with foundations due to unforeseen obstructions, and the respondent ordered their relocation.
Upon completion of the foundations, the claimant began the installation of underground conduit. Claimant planned to perform that work by boring across the intersections. There were 50 intersections of which claimant bored 26 and open cut 24. The open cuts of 48% of the crossings (made necessary by underground obstructions) were made during the fall of 1974 and spring of 1975.
The contract specifically provided for open trenching in Section 2.155.3.8.7 as follows:
“If it is determined by the Engineer that it is impractical to bore the conduit under the pavement due to unforeseeable obstructions, the Contractor may, with the Engineer’s permission, cut the existing pavement. A concrete saw shall be used in order to provide a neat uniform trench across the pavement.”
Claimant notified the respondent of its request for payment for the extra work required for the open cutting in October 1975, a substantial time after the work was performed. Section 105.17 of the Standard Specifications Roads and Bridges, adopted in 1972, requires the claimant to give notice of intent to charge for extra work performed on a project. More specifically, §105.17 provides as follows:
*6 “If, in any case, the Contractor deems that additional compensation is due him for work or material not clearly covered in the Contract or not ordered by the Engineer as extra work, as defined herein, the Contractor shall notify the Engineer in writing of his intention to make claim for such additional compensation before he begins the work on which he bases the claim. If such notification is not given, and the Engineer is not afforded proper facilities by the Contractor for keeping strict account of actual cost as required, then the Contractor hereby agrees to waive any claim for such additional compensation.”
Since the notification required by §105.17 was not given before the work was begun, the claim for extra work must be denied.
A problem with the purchase of rigid bracket mounts which claimant asserts were not indicated on the plans resulted in an additional expense to the claimant in the amount of $5,460.00, less a credit of $455.00 for the returned swing brackets, or a total of $5,005.00. The respondent contends that the plans did provide for the rigid bracket mounts. The swinging brackets originally supplied by the claimant could not be used because they would have caused the signal heads to be mounted on the brackets lower than the minimum height provided in the plans. Reordering and fabrication of the rigid mounts occasioned a three-month delay to the claimant from January 6, 1975 to March 8, 1975. The Court is disposed to make an award in the amount of $5,005.00 for the rigid bracket mounts.
A substantial delay also occurred in the installation of controller cabinets. These cabinets were originally “green tagged”, i.e., accepted and approved by the respondent at the site of the manufacturer. However, the green tags were removed in December 1974. No work could be performed in the installation of the cabinets until March 1975, when the respondent reapproved the controller cabinets which had been originally approved. The problems with the cabinets were later rectified by the supplier in an agreement between the supplier and the respondent. The delay of three months to solve that problem prevented claimant from proceeding with work on the projects.
Another problem which resulted in a delay during the period from December 1974 to March 1975 involved the interconnect cable. The cable was originally “green tagged” and then the green tags were removed at the project site due to a problem with elongation requirements. A delay of three months occurred while the respondent’s consultant tested the cable. The cable ultimately was approved for use *7 on the project. That three-month delay contributed to cause additional costs to the claimant.
This Court previously has held that delays attributable to the “green tagging” process will be borne by the respondent. See Stark Electric, Inc. vs. Dept. of Highways, Dec. 1, 1982. It is the opinion of the Court that an adjustment is due the claimant for the approximate three-month delay which occurred due to the problems experienced with the rigid bracket mounts and the interconnect cable. The additional cost to claimant for labor and equipment during this three-month period was $12,641.00. The delay also resulted in costs for the additional time spent on the project as a result of the delay. The Court has determined that an award of $24,854.00 for that delay is a reasonable sum.
Claimant was assessed $24,450.00 in liquidated damages for 163 days. The imposition of 90 days of the 163 days is unreasonable as respondent itself caused a three-month delay to the claimant as mentioned before. The general rule for assessment of liquidated damages is found in 22 Am.Jur. 2d “Damages”, §233, p. 319 as follows:
“The plaintiff cannot recover liquidated damages for a breach for which he is himself responsible or to which he has contributed, and as a rule there can be no apportionment of liquidated damages where both parties are at fault. Hence, if the parties are mutually responsible for the delays, because of which the date fixed by the contract for completion is passed, the obligation for liquidated damages is annulled and, in the absence of some provision under which another date can be substituted, cannot be revived.”
The delay by the respondent in approving the materials through the “green tag” process contributed to the delay, and the record fails to establish that the respondent sustained any damage by reason of the delay. See Whitmyer Bros., Inc. vs. Dept. of Highways, 12 Ct.Cl. 9 (1977) and Vecellio & Grogan, Inc. vs. Dept. of Highways, 12 Ct.Cl. 294 (1979). However, claimant failed to begin the project at the time the order to proceed was issued by the respondent in October 1973. Rather, claimant began construction on July 23, 1974. For the reasons above, the Court has determined that the liquidated damages should be limited to an assessment of 73 days and that the claimant should not be penalized for the remaining 90 days at $150.00 per day, for a total of $13,500.00.
Pursuant to West Virginia Code §14-3-1, payment of interest at six percent per annum on amounts not paid within 150 days after final ac *8 ceptance of a completed project are recoverable by a contractor. See Vecellio & Grogan, Inc. vs. Dept. of Highways, 12 Ct.Cl. 294 (1979). The Court is informed that the 151st day after final acceptance on this project was July 31, 1977, from which interest is calculated to October 1, 1983, the date of this opinion.
Award of $59,415.88.