WALLACE, JUDGE:
New River Building Company filed this action to recover $156,309.83 as extra costs incurred in the construction of a retaining wall on the campus of West Virginia Institute of Technology (WVIT) located in Montgomery, West Virginia. New River will hereinafter be referred to as the contractor.
The contractor and the West Virginia Board of Regents entered into a contract for the construction of the retaining wall on the campus of WVIT, an institution under the control and supervision of the Board of Regents, on August 17, 1979, in the total amount of $487,000.00. Under the terms of the contract, the method of construction to be used by the contractor for the majority of the length of the wall was sheet piling. In order to use sheet piling, the contractor would need a crane with a boom to drive the sheet piling into the ground to hold back the earthen bank, while the footers were excavated and completed prior to the wall construction. The sheet piling method of construction was not the method of construction used by the contrac *105 tor, due to the presence of electric utility lines on the construction site. The contractor asserts that the alternate method of timber shoring resulted in increased time for performance of the contract, which in turn caused an increase in construction costs. The contractor also asserted that delays which occurred on the project were the fault of respondent and that the contractor should be reimbursed for costs attributed to those delays.
The contractor was to begin site preparation on or about October 1, 1979. However, at the request of President Nelson of WVIT, the date was moved to October 22, 1979, to keep the street adjacent to the wall open to accommodate persons attending a homecoming football game. The contractor had no objection to this request and actual construction began October 22, 1979. During the first week of excavation, the contractor came across an active sewer line and a 13,000 volt electrical line, neither of which was indicated on the plans. The electrical line was actually severed by a laborer during excavation. Fortunately, no personal injuries occurred during this incident. The contractor was delayed in construction progress while solutions to these two problems were worked out.
During the second week of construction, it was determined that the elevations on the plans were erroneous. It was necessary for the architect to send a survey team to check the drawings and then make the proper revisions. The revised drawings were delivered to the contractor on November 19, 1979. A delay of approximately six weeks occurred during which time the contractor used the crew for this project on another project so as not to lose the men when construction of the wall could resume.
During the construction of the first 200 feet of the wall, the contractor used the timber shoring method. The sheet piling was to be used where the wall was higher and the bank less stable. However, Appalachian Power Company (APCO) did not move its utility poles. The T-bar type poles had the electrical lines running parallel to and just about directly over the wall being constructed. The contractor was unable to utilize a crane and boom to drive sheet piling, not only due to the location of the poles and lines, but also to conform to the Occupational Safety and Health Act (OSHA) regulations, which prohibit use of a crane and boom within ten feet of electrical lines. The contractor informed the respondent and the architect that sheet piling could not be used on the project with the electrical lines over the wall. Neither the respondent nor the architect attempted to resolve this problem. The contractor and APCO worked out a method for moving the poles and lines as the contractor excavated for the wall. The ar *106 rangement was satisfactory to the contractor, but this method prevented the contractor from using sheet piling as contemplated in the contract document.
Subsequently, an error in the design plans was discovered in the construction of the sidewalk, which was not a part of the original plans. When the sidewalk was added to the design, the architect failed to change the original design for the drainage system behind the wall. It was then necessary for the contractor to construct a drainage system from behind the wall under the sidewalk out to the street. This involved extra work and extra costs for the contractor as different types of pipe and catch basins behind the wall were necessary and additional drains were required under the sidewalk.
When it became apparent to the parties that sheet piling would not be used on the project, the respondent and the architect requested that the contractor provide an estimate of the costs for timber shoring, with a credit for the sheet piling at the contract, price. The contractor refused to provide the cost estimate asserting that it was not feasible to estimate these costs without knowing how long the project would take to complete.
The wall was completed in 14 months. The contract provided for completion in 190 days. The contractor asserts that the necessity of using the timber shoring method of construction plus the delays caused by the respondent and the architect resulted in the extra time for the project.
The Court has carefully considered all of the allegations of the parties. The contractor did incur extra costs on this project as a result of the failure of the respondent to provide the contractor with the construction site as indicated in the contract, i.e., without electrical lines on the job site. The inability of the contractor to use sheet piling caused the contract construction period to increase greatly. The Court is of the opinion that the contractor is due an award for the extra labor costs and the extended field office overhead for the extra time required on the project.
The Court has concluded from an examination of all of the evidence that the contractor incurred additional costs for construction of the retaining wall. The Court has reviewed all elements of damages attributed to delays occasioned on the project. To simplify the elements of damages the Court has denied or awarded, the following is an itemization of the damages alleged and the Court’s action thereon:
*107 Three-week delay due to late start Denied on the part of the contractor.
Delay on project due to errors in Award of $4,344.85 the elevations.
Delays experienced for redrawing of Award of $9,519.60 the plans.
Cost of using wood shoring versus Award of $26,914.63 the sheet piling - considering a $39,850.00 credit to the respondent as sheet piling is a more expensive item.
Request for reimbursement of Denied
hazard pay.
Profit of 10% on the project.Denied.
Total Award $40,779.08
The Court denies respondent’s request for assessment of liquidated damages as there is no basis for such assessment. The contractor was not charged with liquidated damages during performance of the contract. It was assessed as a set-off to contractor’s claim herein. It is generally accepted that where a party is not damaged by the delay, or when its own actions contributed to the delay on the project, liquidated damages are precluded. See Whitmyer Brothers, Inc. vs. Dept. of Highways, 12 Ct.Cl. 9 (1977).
The Court denies all costs relating to general and administrative expenses of the contractor. These are the costs for doing business and are too speculative for the contractor to assess on a project-by-project basis.
The Court has determined that claimant is entitled to an award of $40,779.08 for the cost overruns and delays experienced on this project, and, accordingly, the Court grants an award to the contractor in that amount.
Award of $40,779.08.